## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. 21-cv-00704-WJM-SKC

A.V., a child, through his mother and next friend, MICHELLE HANSON,

     Plaintiff,

v.

DOUGLAS COUNTY SCHOOL DISTRICT RE-1, *et al.*

     Defendants.

---

## DCSO DEFENDANTS' MOTION TO DISMISS

---

Defendants Tony Spurlock, in his official capacity ("DCSO"), Sidney Nicholson, Lyle Peterson and Daniel Coyle (collectively with Sidney Nicholson and Lyle Peterson, the "Deputies"), through the Douglas County Attorney's Office, hereby move, pursuant to Fed. R. Civ. P. 12(b)(1) and (6), for dismissal of the claims asserted against them in Plaintiff's Complaint and Jury Demand (Doc. 1, "Complaint"), and in support thereof, state as follows:

**STATEMENT PURSUANT TO WJM REVISED PRACTICE STANDARD III(D)(1)**:
Undersigned counsel state that they discussed this motion and the arguments raised herein with Plaintiff's counsel by telephone on May 7, 2021, and by Zoom on May 9, 2021. The conferral was substantive, and Plaintiff's counsel clarified the basis of several claims in the Complaint which focused the scope of this motion. (*See, e.g.,* § II.A.1. at n.2.) Plaintiff opposes this motion.

## I. INTRODUCTION

Plaintiff's claims in this action arise out of an incident in which he was arrested, handcuffed, and transported to a juvenile detention center, as an eleven-year old student with alleged disabilities, after he assaulted another student in a classroom setting. The factual allegations underlying Plaintiff's claims against DCSO and the Deputies (collectively, "DCSO Defendants") mirror those already considered and rejected by the Tenth Circuit in *J.H. ex rel. J.P.*

*v. Bernalillo County*, 806 F.3d 1255, 1260 (10th Cir. 2015).  While the Complaint adds allegations about statistical data, news reports, and other general allegations regarding the Douglas County schools in an effort to establish liability on the part of DCSO, it is fundamentally lacking in factual allegations that actually involve DCSO.  Ultimately, Plaintiff's complaint against the DCSO Defendants is that they discriminated against him by not treating him differently and that they used excessive force by virtue of the fact that they used any force at all.  As the Tenth Circuit has already done, this Court should reject those claims.

## II.    ARGUMENT

Plaintiff brings three claims against DCSO, alleging violations of Title II of the Americans With Disabilities Act ("Title II") and the Rehabilitation Act ("Section 504") as well as 42 U.S.C. § 1983 for the alleged use of excessive in violation of his Fourth Amendment rights.  (Doc. 1 at 20-24.)  Plaintiff's 42 U.S.C. § 1983 excessive force claim is also brought against the Deputies. (*Id.* at 23-24.)  Plaintiff's factual allegations do not establish intentional discrimination by reason of his disability as is required to plead his claims under Title II and Section 504.  The Complaint also fails to plead facts sufficient to establish a Fourth Amendment violation and is contrary to clearly established law, necessitating dismissal of his § 1983 claims as a matter of law. Accordingly, the claims against the DCSO Defendants should be dismissed.

### A.    Plaintiff Has Not Pled A Violation Of Title II And Section 504.

Under Title II of the ADA, "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. §12132.  To state a claim under Title II, a plaintiff must prove: "(1) that he [or she] is a qualified individual with a disability; (2) that he [or she] was either excluded from participation in

or denied the benefits of some public entity's services, programs, or activities, or was otherwise discriminated against by the public entity; and (3) that such exclusion, denial of benefits, or discrimination was by reason of the plaintiff's disability. *Gohier v. Enright*, 186 F.3d 1216, 1219 (10th Cir. 1999). The substantive standards applicable to a Section 504 claim are the same.[1] *Id.*; *Cunningham v. Univ. of M.M. Bd. of Regents*, 531 F.App'x 909, 919 (10th Cir. 2013).

The Supreme Court has not decided whether Title II applies to arrests. *City & Cty. of San Francisco v. Sheehan*, 575 U.S. 600, 609-10 (2015). Federal courts that have allowed Title II claims in the context of an arrest recognize such claims under only two theories, either a wrongful arrest theory or a reasonable accommodation theory. *Gohier*, 186 F.3d 1220-21. Although the Tenth Circuit has stated in *dicta* that the ADA does not categorically lack applicability to arrests, it has not expressly adopted either of these two theories. *Id.* at 1221; *J.H. ex rel. J.P.*, 806 F.3d at 1260-61. Even assuming either theory is available to Plaintiff here, the Complaint does not allege facts establishing a wrongful arrest claim or a reasonable accommodation claim.

### 1. Plaintiff has not pled a wrongful arrest claim.

A wrongful arrest claim under Title II has been described as one in which "police wrongly arrested someone with a disability because they misperceived the effects of that disability as criminal activity." *Gohier*, 186 F.3d at 1220. Such claims encompass circumstances in which a law enforcement officer misperceives lawful conduct caused by an individual's disability as criminal conduct and arrests the individual for that conduct. *Id.* at 1222. The Tenth Circuit has pointed to an arrest of a sober individual for drunk driving when the individual's slurred speech and unsteadiness were caused by a prior stroke and an individual arrested for resisting law

---

[1]   In light of this substantive overlap, the two claims are addressed collectively, and reference to one Act should be construed as a reference to both.

enforcement when the individual was deaf and unable to hear law enforcement's commands as potential examples of wrongful arrest claims. *Id.* at 1221. Plaintiff's Complaint does not allege facts evidencing that Plaintiff was wrongfully arrested because of a disability.

The incident underlying Plaintiff's claims occurred when he was eleven and "bec[a]me escalated" during one of his classes at Sagewood Middle School after another student wrote on him with marker. (Doc. 1 ¶¶ 15, 23, 24.) According to the Complaint, Plaintiff had been diagnosed with Autism Spectrum Disorder and an emotional disability at the time. (*Id.* ¶ 18.) The Complaint alleges that Plaintiff responded by "poking" the other student with a pencil—a "poke" that was serious enough to break the skin and create a roughly one-inch cut on the student's arm. (*Id.* ¶ 25.) The Principal and Dean of Students were summoned to the classroom. (*Id.* ¶¶ 27, 28.) Plaintiff was told to leave the classroom, and the Principal texted the school resource officer ("SRO") assigned to the school. (*Id.* ¶¶ 29, 30, 34.) Deputies Nicholson and Peterson arrived at the school in response to the Principal's text and were informed that another student had asked Plaintiff to stop doing something and Plaintiff had responded by "stabbing" the student with a pencil. (*Id.* ¶¶ 35, 36.) The Complaint alleges that Deputies Nicholson and Peterson subsequently arrested and handcuffed Plaintiff "despite the fact that A.V. was sitting quietly and that there was no emergency requiring immediate intervention[.]" (*Id.* ¶ 45.)

The foregoing allegations demonstrate that Plaintiff assaulted another student in his classroom and was subsequently arrested for doing so. The allegations do not establish that the Deputies misperceived Plaintiff's lawful conduct to be criminal activity; to the contrary, Plaintiff engaged in assaultive conduct that was *not* lawful. *See J.H.*, 806 F.3d at 1260 (concluding that where eleven-year-old student with special needs was arrested after she kicked her teacher, "[i]t was that battery, rather than a disability, that led to the arrest[,]" and, "[a]s a result, the arrest did

not constitute discrimination against [the student] based on her alleged disability"); *Gohier*, 186 F.3d at 1221 ("Officer Enright did not use force on Mr. Lucero because he misperceived the lawful effects of his disability as criminal activity, inasmuch as Lucero's assaultive conduct was not lawful.").  Deputies Nicholson and Peterson arrested Plaintiff based on probable cause that he had committed a crime, not based on an alleged disability, and Plaintiff does not dispute the existence of probable cause supporting his arrest.[2]  To the extent Plaintiff challenges his arrest as "based on actions that manifested [his] disability[,]" the Tenth Circuit has rejected this claim as a matter of law.  *J.H.*, 806 F.3d at 1259; *see also Scott v. City of Albuquerque*, 711 F.App'x 871, 884 (10th Cir. 2017) (finding no ADA claim where the plaintiff alleged he was arrested because of the manifestations of his disability, explaining "we have repeatedly rejected such arguments").  The Deputies were entitled to make the arrest based on probable cause, and the fact that they did so does not violate Title II or Section 504.  *J.H.*, 806 F.3d at 1259.

> **2.      Plaintiff has not pled facts supporting a reasonable accommodation claim.**

The second theory courts have considered when analyzing the ADA in the context of an arrest is reasonable accommodation.  *Gohier*, 186 F.3d at 1220.   Under a reasonable accommodation theory, while law enforcement may have properly arrested an individual with a disability for unlawful conduct, "they failed to reasonably accommodate the person's disability in the course of investigation or arrest, causing the person to suffer greater injury or indignity in that process than other arrestees."   *Id.* at 1220-21.   If an officer "incurs a duty to reasonably accommodate a person's disability during an arrest, this duty would have arisen only if [the officer] had known that [the disabled individual] needed an accommodation."   *J.H.*, 806 F.3d at 1261.

---

[2] Plaintiff's counsel confirmed during conferral that Plaintiff does not challenge the existence of probable cause supporting Plaintiff's arrest.

Even if the Tenth Circuit recognized the theory, the Complaint's factual allegations do not establish that the Deputies knew of a need to accommodate Plaintiff during his arrest.

While the Complaint includes several allegations that Deputies Nicholson and Peterson were told at various times that Plaintiff had an emotional disability, those allegations alone do not establish a reasonable accommodation claim. *See Scott*, 711 F.App'x at 885 (finding officer's knowledge of twelve-year-old student's disability diagnosis would not, without more, necessarily make the officer aware that the student needed an accommodation). Rather, Plaintiff must be able to demonstrate that the Deputies knew Plaintiff needed an accommodation. *J.H.*, 806 F.3d at 1261. As was the case in *J.H.*, Plaintiff does not assert that he requested any reasonable accommodation. 806 F.3d at 1261.

Moreover, the accommodations the Complaint alleges should have been provided to Plaintiff do not support a reasonable accommodation claim. The Complaint posits that Plaintiff should not have been arrested and transported to a juvenile detention center at all and that the Deputies should instead have considered alternatives to arrest. (Doc. 1 ¶ 99.) The Tenth Circuit has rejected the argument that arrest and transport to a juvenile detention facility violates Title II where the arrest is supported by probable cause, as was the case here. *Scott*, 711 F.App'x at 885; *J.H.*, 806 F.3d at 1262. Reasonable accommodation does not obligate law enforcement to ignore illegal conduct, even where the party engaged in illegal activity is an eleven-year-old student alleged to have disabilities who engaged in assaultive conduct in a school setting. *J.H.*, 806 F.3d at 1256-57, 1262.

Plaintiff also alleges that the Deputies failed to reasonably accommodate him because they handcuffed him. (Doc. 1 ¶ 99.) Plaintiff's allegations that he was eleven years old at the time and had been diagnosed with disabilities do not obviate the legitimate safety concerns that warranted

6

the handcuffing.  *See J.H.*, 806 F.3d at 1259.  Indeed, Plaintiff's allegations demonstrate that safety concerns were warranted under the circumstances.  Plaintiff's arrest was for assaulting another individual and began kicking and thrashing his head as he was being handcuffed.  (Doc. 1 ¶¶ 48, 49.)  Those allegations do not suggest that holding and transporting Plaintiff unhandcuffed would have been a reasonable accommodation.  *See J.V. v. Albuquerque Pub. Schs.*, 813 F.3d 1289, 1295 (10th Cir. 2016) (finding failure to establish twelve-year-old child with alleged disabilities at issue was handcuffed "by reason of his disability" fatal to an ADA claim for handcuffing).

Plaintiff also contends he should have been taken to the hospital instead of being taken to the juvenile detention center.  As with handcuffing, however, the Deputies are entitled to consider safety and security issues in effectuating the arrest.  *See J.H.*, 806 F.3d at 1259 (although student alleged to have disabilities was only eleven at the time of her arrest, "[a]n arrestee's age . . . do[es] not necessarily undermine an officer's concern for safety and need to control the situation") (quoting *Hawker v. Sandy City Corp.*, 591 F.App'x 669, 675 (10th Cir. 2014)).  The Complaint does not allege that Plaintiff suffered any injuries constituting a medical emergency that would require immediate transport to a hospital, nor does it allege that the Deputies had any reason to believe that Plaintiff would not receive a medical evaluation at the juvenile detention center, a facility that is not alleged to be operated by DCSO.  The Complaint also does not allege other arrestees, under similar circumstances, would have been transported to a hospital instead of the juvenile detention center, causing Plaintiff to arguably "suffer greater injury and indignity in those processes than other arrestees."  *Cf. Gohier*, 186 F.3d at 1221.  Even viewed in the light most favorable to Plaintiff, the Complaint does not plead facts that would establish a failure to reasonably accommodate Plaintiff during his arrest and transport.

### 3. Plaintiff has not pled facts establishing intentional discrimination.

Courts have generally required private plaintiffs seeking compensatory damages against a public entity under Section 504 and Title II to establish intentional discrimination.[3] *See Powers v. MJB Acquisition Corp.*, 184 F.3d 1147, 1153 (10th Cir. 1999) ("We agree with the course charted by our sister circuits and hold that entitlement to compensatory damages under section 504 of the Rehabilitation Act requires proof that the defendant has intentionally discriminated against the plaintiff."); *Tyler v. City of Manhattan*, 118 F.3d 1400, 1403 (10th Cir. 1997) (affirming district court order striking plaintiff's claim for compensatory damages where plaintiff's claims did not establish intentional wrongdoing). In the Tenth Circuit, "intentional discrimination can be inferred from a defendant's deliberate indifference to the strong likelihood that pursuit of its questioned policies will likely result in a violation of federally protected rights." *Barber ex rel. Barber v. Colo. Dept. of Revenue*, 562 F.3d 1222, 1228-29 (10th Cir. 2009). Deliberate indifference in the ADA context has been construed to be consistent with deliberate indifference in the context of section 1983 claims. *J.V.*, 813 F.3d at 1298.

#### i. DCSO Is Not Vicariously Liable For The Conduct Of The Deputies.

Plaintiff's allegations do not plead facts evidencing deliberate indifference by DCSO as an entity. Instead, Plaintiff alleges that the Deputies acted with indifference. (Doc. 1 ¶ 133.) In doing so, Plaintiff's allegations incorrectly assume that a public entity can be vicariously liable for damages under Title II if the *officers'* conduct was deliberately indifferent.

---

[3] Plaintiff's Complaint does not request injunctive relief. (*See* Doc. 1 at 24-25.) To the extent Plaintiff's general prayer for "[a]ny further relief that this Court deems just and proper in equity and at law" could be construed to request an award of injunctive relief, Plaintiff lacks standing to seek injunctive relief because he has failed to plead facts establishing a real and immediate threat that he is likely to be injured in a similar way in the future. *See, e.g., Gray v. Cummings*, 917 F.3d 1, 19 (1st Cir. 2019); *Chapman v. Pier I Imports (U.S.) Inc.*, 631 F.3d 939, 946 (9th Cir. 2011).

In fashioning a remedy for violations, Title II adopts the enforcement provisions of the Rehabilitation Act, which, in turn, adopts the enforcement provisions applicable to Title VI of the Civil Rights Act of 1964. *See* 42 U.S.C. § 12133; 29 U.S.C. § 794a(a)(2). The Supreme Court has construed Title IX, which was modeled after Title VI, as prohibiting vicarious liability, prompting many federal courts to likewise prohibit vicarious liability under Title VI. *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 277 (1998); *cf.*, *e.g.*, *Rodgers v. Smith*, 842 F.App'x 929, 929 (5th Cir. 2021) ("Title VI allows neither personal liability claims against individuals nor vicarious liability claims against employers for the acts of their employees."); *Foster v. Mich.*, 573 F.App'x 377, 389 (6th Cir. 2014) ("*Gebser*'s interpretation that there is no vicarious[ ] liability under Title IX supports the notion that there is no vicarious liability under Title VI.").

"Because entities cannot be vicariously liable on a *respondeat superior* theory under Title VI, the same principle applies to Title II ADA or Rehabilitation Act claims." *Arthur v. D.C. Housing Auth.*, No. 18-cv-2037 (DLF), 2020 WL 1821111, *11 (D.D.C. Apr. 11, 2020); *see also Liese v. Indian River Cty. Hosp. Dist.*, 701 F.3d 334, 345-47 (11th Cir. 2012) (enumerating similarities warranting comparable construction). As with Title VI, neither Title II nor Section 504 can be construed to impose vicarious liability on a public entity based on the conduct of its employees. *See Liese*, 701 F.3d at 350 ("Because of the similarities between Title IX and the RA, *Gebser*'s purpose-and-scope reasoning applies with similar force to the RA and yields the same result."); *Arthur*, 2020 WL 1821111, at *11 ("Absent a clear congressional intent to the contrary, it would be inconsistent to permit a theory of vicarious liability that Title VI forbids.") (internal citation omitted); *Hooper v. City of St. Paul*, No. 17-CV-3442 (PJS/DRS), 2019 WL 4015443, *9 (D. Minn. Aug. 26, 2019) (rejecting the availability of vicarious liability under the ADA and Rehabilitation Acts because "a close examination of the text of the two statutes strongly suggests

that Congress did not intend to open the door to vicarious liability" and "the Supreme Court found that a materially identical statute—Title IX of the Education Amendments of 1972—does not establish vicarious liability").

Furthermore, the text of the ADA itself evidences Congress' intent to prevent public entities from assuming vicarious liability under Title II.  As several courts have observed, Title I of the ADA expressly defines employers to include their agents while Title II does not define a public entity to include its agents. *See, e.g.*, *Arthur*, 2020 WL 1821111, at *11; *Hooper*, 2019 WL 4015443 at *10.  Congress' differentiation in that language provides further evidence that it did not intend for Title II to create vicarious liability for public entities.

ii.    Plaintiff Has Not Pled Facts Establishing DCSO's Direct Liability.

Under the Supreme Court's analysis in *Gebser*, a plaintiff may only recover damages where the plaintiff can demonstrate that "an official who at a minimum has authority to address the alleged discrimination and to institute corrective measures on the [public entity's] behalf has actual knowledge of discrimination in the recipient's programs and fails adequately to respond."  524 U.S. at 290.  The Complaint is devoid of facts evidencing that any member of DCSO's command staff with the authority to implement corrective measures had knowledge of, and was deliberately indifferent to, any putative discrimination by its deputies in effectuating arrests of students with disabilities at the time of the Plaintiff's arrest.

Plaintiff alleges DCSO was deliberately indifferent in failing to adequately train its employees.  The Tenth Circuit has not adopted such a claim under the ADA, *J.V.*, 813 F.3d at 1297, but even so, Plaintiff's allegations are insufficient.  While the Complaint contains a conclusory allegation that "[t]he Sheriff and School District were on notice of the need for more or different training" (Doc. 1 ¶ 136), no facts are alleged evidencing notice to anyone at DCSO

with authority to restructure its training program that the existing training program was deficient. Instead, Plaintiff's allegations of "notice" prior to the incident only address the Douglas County School District ("DCSD").  Plaintiff alleges that nearly four years before he was arrested, another child with autism at a DCSD school was criminally charged with assault and harassment.  (Doc. 1 ¶ 107.)   The Complaint does not allege any specific involvement in the arrest by DCSO or any facts evidencing an ADA or Rehabilitation Act violation by a DCSO employee.  (*See* Doc. 1 ¶ 107 & n.5); *cf. J.V.*, 813 F.3d at 1298 (finding plaintiffs could not establish notice of a need for more or better training where "[t]hey did not point to even a single incident of an APS officer having any problem in calming a disabled student before the incident with C.V.").  Plaintiff also describes various statistics in DCSD schools regarding restraints, seclusions and referrals to the criminal justice system, divorced from any facts establishing wrongful conduct, and agreements that DCSD entered into with the U.S. Department of Education Office for Civil Rights, but those allegations likewise do not allege any participation or involvement by DCSO.  (*See* Doc. 1 ¶¶ 103-05, 110.)

Having failed to identify any prior incidents involving DCSO that could have put it on notice that its training program was deficient, Plaintiff alleges certain published statistics and news stories from other jurisdictions released prior to this incident should have alerted DCSO to "the risks that students' rights would be violated if they did not provide further training on handling students with disabilities."  (*Id.* ¶¶ 112, 120.)  These allegations lack specificity; Plaintiff provides no indication of why these news stories and statistics could or should have alerted DCSO of putative deficiencies in any particular aspect of its own training program (including what those alleged deficiencies were) or what alternative training should have been provided.  *See*, *e.g.*, *King v. Hendricks Cty. Comm'rs*, 954 F.3d 981, 989 (7th Cir. 2020) (finding plaintiff's allegations of county's alleged supervisory deficiencies to be inadequate where the plaintiff asserted additional

training was necessary but failed to identify what training should have been provided and how that training would have changed the outcome of the interaction at issue, involving a county law enforcement officer and an individual with mental illness). Indeed, reports of incidents in other jurisdictions, when compared to the absence of incidents involving DCSO, could reasonably be perceived as demonstrating the effectiveness of DCSO's training program. The Complaint's failure to link the news stories and statistics to some specific aspect of DCSO's allegedly deficient training program precludes any inference of notice or deliberate indifference. *See*, *e.g.*, *K.C. ex rel. T.C. v. Marshall Cty. Bd. of Educ.*, 762 F.App'x 226, 232 (6th Cir. 2019) (rejecting plaintiff's ADA and Rehabilitation Act claims for damages based on lack of evidence of deliberate indifference, explaining that "[t]he Board cannot be liable for deliberate indifference for acts about which it had no knowledge"); *J.V.*, 813 F.3d at 1298 (applying deliberate indifference standard applicable to § 1983 claims to the plaintiff's ADA failure to train claim and finding bare allegations of failure to train were "not nearly enough to show deliberate indifference").

        iii.    <u>The Complaint Does Not Allege Facts Evidencing The Deputies' Deliberate Indifference</u>.

Even assuming DCSO could be vicariously liable under the ADA and Rehabilitation Act for conduct of the Deputies in arresting Plaintiff, the Complaint falls short of pleading facts evidencing deliberate indifference by the Deputies. "Deliberate indifference requires both knowledge that harm to a federally protected right is substantially likely, and a failure to act upon that . . . likelihood." *J.V.*, 813 F.3d at 1298 (internal citation omitted). To establish deliberate indifference, a plaintiff must demonstrate that an alleged failure to act is more than negligent and instead evidences an element of deliberateness. *Id.* at 1298. As discussed in Section II.B.1.ii., *supra*, the law in the Tenth Circuit at the time of Plaintiff's arrest would not have put the Deputies on notice that their conduct was likely to violate his federally protected rights; to the contrary,

Tenth Circuit decisions at the time of Plaintiff's arrest established that the Deputies' conduct did not violate his rights, including those under Title II and Section 504. *See, e.g.*, *Scott*, 711 F.App'x at 885; *J.V.*, 813 F.3d at 1295; *J.H.*, 806 F.3d at 1262; *Gohier*, 186 F.3d at 1220. In light of existing law, Plaintiff's allegations do not evidence the type of deliberate conduct that could be construed as deliberate indifference to his rights.

**B.      Plaintiff Has Failed To Establish A Basis For Liability Under 42 U.S.C. § 1983.**

Plaintiff's third claim alleges the Deputies used excessive force by handcuffing and restraining him in violation of the Fourth Amendment and that DCSO is liable for failing to adequately train its deputies. (Doc. 1 ¶¶ 151-53, 156.) However, the Complaint fails to establish that the actions of any of the Deputies constituted a violation of his constitutional rights, and further, the law is clearly established that the Deputies' actions were reasonable in arresting and handcuffing Plaintiff, including through the duration of his transport to the juvenile detention center. The Deputies are qualifiedly immune from Plaintiff's Fourth Amendment claims. In the absence of a constitutional violation, Plaintiff's municipal liability claim also fails. Moreover, Plaintiff has not pled a cause of action for municipal liability based on an alleged failure to train because the Complaint has not pled facts evidencing a pattern of excessive force prior to Plaintiff's arrest that could have put DCSO on notice that its training program was deficient.

**1.      The Deputies are entitled to qualified immunity.**

"Individual defendants named in a § 1983 action may raise a defense of qualified immunity," which, once raised, shifts the burden to plaintiff to show that the defendant violated a constitutional right and that the constitutional right was clearly established. *Pauly v. White*, 874 F.3d 1197, 1214 (10th Cir. 2019). On a motion to dismiss raising qualified immunity, the Court credits the plaintiff's well-pled allegations. *Apodaca v. Raemisch*, 864 F.3d 1071, 1075 (10th Cir.

2017).  Individual liability under § 1983 "must be based on personal involvement in the alleged constitutional violation."  *Foote v. Spiegel*, 118 F.3d 1416, 1423 (10th Cir. 1997); *see Stidham v. Peace Officer Standards & Training*, 265 F.3d 1144, 1156-57 (10th Cir. 2001) (an affirmative link is required in a complaint between each defendant and the constitutional deprivation).  A plaintiff cannot simply allege conduct on the part of individuals collectively.  *See Robbins v. Okla.*, 519 F.3d 1242, 1249-50 (10th Cir. 2008) (a complaint is to make clear who is alleged to have done what and to whom so individuals have "fair notice as to the basis of claims" against them).

> i.   Plaintiff Has Not Plead A Constitutional Violation Of His Fourth Amendment Rights.

The Fourth Amendment protects the right of people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures.  *D.C. v. Wesby*, 138 S. Ct. 577, 585 (2018).   Arrests are seizures of persons and must therefore be reasonable under the circumstances.  *Id.*  This objective reasonableness standard is not different when the alleged Fourth Amendment violation is as against a minor.  *Hawker*, 591 F.App'x at 674 & n.8.  Plaintiff does not contest that the Deputies had probable cause to arrest him.  *See J.H.*, 806 F.3d at 1258 (probable cause entitles an officer to make an arrest regardless of if the arrestee is an adult or a juvenile and if the alleged crime is a felony or misdemeanor).  The Complaint alleges excessive force was used in seizing Plaintiff by "aggressively" handcuffing him and keeping him handcuffed until he arrived at the juvenile detention center in violation of his Fourth Amendment rights.  (Doc. 1 ¶ 152.)

The Tenth Circuit analyzes uses of force "under the 'objective reasonableness' standard of the Fourth Amendment."  *Marquez v. City of Albuquerque,* 399 F.3d 1216, 1220 (10th Cir. 2005) (citing *Graham v. Conner,* 490 U.S. 386, 388 (1989)).  Courts consider the totality of the circumstances to determine if an officer's actions were objectively reasonable.  *Scott*, 711 F.App'x at 880.  This inquiry begins with, but is not limited to, the *Graham* considerations of "the severity

of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Weigel v. Broad*, 544 F.3d 1143, 1151-52 (10th Cir. 2008).  When an excessive force claim involves handcuffing, Tenth Circuit precedent requires a showing of actual, non-de minimis physical, emotional, or dignity injury to succeed.  *Scott*, 711 F.App'x at 880 ("[H]andcuffing itself is not necessarily an excessive use of force in connection with an arrest.").

        a.    <u>Deputies Nicholson and Peterson did not use excessive force in securing Plaintiff in handcuffs</u>.

The allegations regarding the level of force used by Deputies Nicholson and Peterson inside the school do not meet the threshold for establishing an excessive force claim.  The two Deputies are conclusorily alleged to have used "threatening" mannerisms without any detail as to what the mannerisms were or how they were threatening.  (Doc. 1 ¶¶ 45, 47.)  Deputy Nicholson is alleged to have taken hold of Plaintiff's right arm and to have held him at the nape of his neck and Deputy Peterson is alleged to have taken hold of Plaintiff's left arm above the elbow.  (*Id.* ¶¶ 48, 51.)  The Complaint concedes these actions were taken to secure Plaintiff in handcuffs.  (*See id.* ¶ 48.)  Although Plaintiff is alleged to have made statements to the effect of "ow" or that the actions hurt, there are no allegations that the Deputies' holding Plaintiff by the arms or the nape of his neck left any sort of physical injury, red marks, bruising or otherwise.

Even if there was injury alleged based on these actions, the first *Graham* factor weighs against Plaintiff's claim that the force was excessive.  Deputies Nicholson and Peterson were summoned to the school by the Principal and upon arrival were informed that Plaintiff had stabbed another student with a pencil.  (Doc. 1 ¶¶ 34, 36.)  The Complaint details the difficulty the two Deputies had securing Plaintiff into custody, having to ask Plaintiff, who was pulling away from the Deputies and kicking out, to stop resisting them.  (*Id.* ¶¶ 48, 52-53.)  Ultimately, Plaintiff was

charged with three misdemeanor charges and one charge of second-degree felony for assault, harassment and resisting.  (*Id*. ¶ 79.)  The Deputies had probable cause to arrest Plaintiff and their actions in doing so were reasonable and commensurate with the alleged crimes.

The second and third *Graham* factors further weigh in favor of the reasonableness of the Deputies' actions.  Again, the Deputies had knowledge of Plaintiff stabbing another student, an assault.  (Doc. 1 ¶ 36.)  It is alleged that Plaintiff had pushed past teachers to exit his classroom and one of the charges against him was harassment for striking school staff.  (*Id*. ¶¶ 30, 79.)  The Complaint alleges Plaintiff was told to stop resisting and that he was kicking out.  (*Id*. ¶ 48, 53.) In order to secure Plaintiff in handcuffs based on the probable cause the Deputies possessed for an arrest, to ensure the safety of themselves and others and in light of Plaintiff's own actions they necessarily may have to put their own hands on Plaintiff.  *See A.M. v. Holmes*, 830 F.3d 1123, 1151 (10th Cir. 2016) (an officer's "right to make an arrest necessarily carries with it the right to use some degree of physical coercion to effect it.").  The Fourth Amendment does not require that law enforcement "use the least intrusive means in the course of a detention, only reasonable ones." *Hawker*, 591 F.App'x at 674 (quoting *Fisher v. City of Las Cruces*, 584 F.3d 888, 894 (10th Cir. 2009)); *see Graham*, 490 U.S. at 396 ("Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment.").  "The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Graham*, 490 U.S. at 396-97.  Here, Deputies Nicholson and Peterson used a reasonable amount of force to take Plaintiff into custody.[4]

---

[4] Although the Complaint alleges that the Deputies erroneously interpreted Plaintiff's reactions as resisting and being violent (Doc. 1 ¶ 53), Deputies Nicholson's and Peterson's subjective state of mind is irrelevant to Plaintiff's Fourth Amendment claim.  *A.M.*, 830 F.3d at 1151.

Considering the totality of the circumstances, Deputy Nicholson and Deputy Peterson did not violate Plaintiff's Fourth Amendment rights in their actions securing him into handcuffs.

          b.    <u>Plaintiff's allegations of being handcuffed fall short of establishing a claim for excessive force</u>.

The allegations in the Complaint regarding the duration of Plaintiff's handcuffing are also inadequate to state a claim for excessive force. Plaintiff alleges he was handcuffed for roughly two hours, from initially being handcuffed in the school until after arriving at the juvenile detention center. (Doc. 1 ¶¶ 62, 64-65, 72-74.) These allegations are insufficient to state a claim for excessive force under Tenth Circuit precedent. The existence of probable cause to arrest Plaintiff gave the Deputies the right to restrict Plaintiff's freedom of movement and to also keep him handcuffed for the trip to the juvenile detention center. *See J.H.*, 806 F.3d at 1258 ("[T]he Fourth Amendment did not require [the officer] to release [the minor arrestee] to her mother's custody"). The length of time he alleges being handcuffed is not tantamount to excessive force. *See Scott*, 711 F.App'x at 881 (Court found no constitutional violation even where minor arrestee was "in pain for hours while wearing the handcuffs").

Even assuming the mere length of time Plaintiff was in handcuffs could be the basis of an excessive force claim, Plaintiff has not alleged an injury sufficient to support such a claim. To state a claim, Plaintiff must allege a non-de minimis injury caused by the handcuffs. *Scott*, 711 F.App'x at 880. The Tenth Circuit has previously found that allegations of a minor being placed in handcuffs and "paraded" through the school are insufficient. (Doc. 1 ¶ 52); *cf. Scott*, 711 F.App'x at 881-82 ("alleged humiliation must be more harmful than that which accompanies the typical custodial arrest"). Similarly, the Tenth Circuit has found that allegations of bruised and swollen wrists for up to a week after the handcuffing, and redness, soreness, and indentations on the wrists from handcuffs do not constitute non-de minimis injury. (Doc. 1 ¶¶ 55, 82); *cf. Scott*,

711 F.App'x at 881 ("Simply put, [Plaintiff's] injuries were not severe enough to render [the officer's] force excessive.").  Plaintiff's lack of injury further defeats his excessive force claim.

c.  <u>Deputy Coyle's alleged involvement is not actionable, and he must be dismissed</u>.

Despite naming three individual Deputies and frequently referring to them collectively, the allegations in the Complaint are limited as to Deputy Coyle's involvement; the only arguable claim against him is not removing Plaintiff's handcuffs once Plaintiff was already in the patrol car.  (Doc. 1 ¶¶ 65, 73-74.)  Deputy Coyle is not alleged to have had any involvement in the actual arrest of Plaintiff or the alleged level of force used to secure him in handcuffs.  Furthermore, because the Complaint fails to meet the Tenth Circuit's threshold for establishing an excessive force claim premised on being handcuffed, Deputy Coyle cannot be liable to Plaintiff for violations based on that ground.  As such, Deputy Coyle is entitled to dismissal from this action.

ii.  <u>There Is No Clearly Established Law That Would Put The Deputies On Notice That Their Actions Amounted To An Unconstitutional Violation</u>.

Even assuming any of the three Deputies had violated Plaintiff's constitutional right against excessive force, the law is not clearly established that their conduct in handcuffing him was unlawful.  Indeed, the law is clearly established to the contrary.  For a legal principle to be clearly established, "[t]he rule must be 'settled law,' which means it is dictated by 'controlling authority' or 'a robust consensus of cases of persuasive authority[.]'"  *D.C. v. Wesby*, 138 S. Ct. 577, 589 (2018).  "The 'clearly established' standard also requires that the legal principle clearly prohibit the officer's conduct in the particular circumstances before him."  *Id.* at 590.  "[A] right is clearly established when a precedent involves ' '*materially similar conduct*' ' or applies ' 'with *obvious clarity*' ' to the conduct at issue."  *Apodaca v. Raemisch*, 864 F.3d 1071, 1076 (10th Cir. 2017) (emphasis in original) (citations omitted).

The Tenth Circuit has previously found that there is no clearly established law indicating that a plaintiff's minor status can negate an officer's customary right to place an arrestee in handcuffs during an arrest. *A.M.*, 830 F.3d at 1152. Furthermore, the holdings in *J.H.* and *Scott* demonstrate the lawfulness of the Deputies' actions in arresting and handcuffing Plaintiff notwithstanding his age or his alleged disabilities. Under clearly established law in the Tenth Circuit at the time of Plaintiff's arrest, the Deputies had no reason to believe that arresting a minor with alleged disabilities for assault supported by probable cause, and handcuffing and continuing to secure Plaintiff in handcuffs in the patrol car until he was delivered to the juvenile detention center could constitute a violation of Plaintiff's Fourth Amendment rights.

### 2.    Plaintiff's § 1983 claim against DCSO must be dismissed.

Finally, Plaintiff alleges that the "Sheriff's Office failed to adequately train and supervise SROs, despite foreseeable consequences of such failure" and that this alleged "deliberately indifferent failure to train was a proximate cause of the violations of A.V.'s Fourth Amendment rights."[5] (Doc. 1, at ¶ 156). Setting aside Plaintiff's conclusory assertions of deliberately indifferent conduct, the facts pled in the Complaint do not establish a violation of Plaintiff's Fourth Amendment rights, nor do they meet the heavy burden attendant to establishing municipal liability based on an alleged failure to train.

---

[5] Although Plaintiff alleges that DCSO failed to supervise SROs, supervisory liability attaches to an individual, and such liability requires a showing that the supervisor actively participated or acquiesced in the constitutional violation by a subordinate. *Burke v. Regalado*, 935 F.3d 960, 998 (10th Cir. 2019); *Serna v. Dep't of Corrections*, 455 F.3d 1146, 1151 (10th Cir. 2006). Plaintiff has not pled such a claim and, in any event, would not be able to establish active participation or that a supervisor, presumably Sheriff Spurlock, "acted knowingly or with 'deliberate indifference' that a constitutional violation would occur[,]" *Serna*, 455 F.3d at 1151, for the same reasons Plaintiff cannot show DCSO was deliberately indifferent with respect to its training.

i.  The Absence Of A Fourth Amendment Violation Defeats Plaintiff's Municipal Liability Claim.

Plaintiff's claim for municipal liability is predicated on the excessive force claim he alleges against the Deputies.  For the reasons discussed in Section II.B.1.i above, the force used to make Plaintiff's arrest did not violate his Fourth Amendment rights.  Plaintiff's failure to plead an underlying violation of his constitutional rights necessarily precludes his claim for municipal liability.  *See Hinton v. City of Elwood*, 997 F.2d 774, 782 (10th Cir. 1993) (a local government "may not be held liable where there was no underlying constitutional violation by any of its officers"); *see also City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986) (finding in the absence of a constitutional injury, "the fact that the departmental regulations might have *authorized* the use of constitutionally excessive force is quite beside the point") (emphasis in original).

ii.  The Complaint Does Not Plead Facts Establishing Municipal Liability.

In order to state a § 1983 claim for municipal liability, a plaintiff must allege the existence of: (1) an official policy or custom; (2) a direct causal link between the policy or custom and the constitutional injury alleged; and (3) deliberate indifference on the part of municipality.  *Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 769-771 (10th Cir. 2013) (a plaintiff must "show that the policy was enacted or maintained with deliberate indifference to an almost inevitable constitutional injury").  The "official policy or custom" requirement "was intended to distinguish acts of the *municipality* from acts of the *employees* of the municipality, and thereby make clear that municipal liability is limited to action for which the municipality is actually responsible."  *Pembaur v. City of Cincinnati*, 475 U.S. 469, 479 (1986) (emphasis in original).

The Complaint lacks factual allegations establishing a deliberately indifferent failure to train that caused Plaintiff's alleged constitutional deprivation.  A plaintiff bears a heavy burden when asserting a claim based on an alleged failure to train.  As the Tenth Circuit has explained,

> '[a] municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train.' The municipality can incur liability for a failure to train only upon proof of 'deliberate indifference,' which is a 'stringent standard of fault[.]' To satisfy this stringent standard, [a plaintiff] need[s] to show that the [municipality] had 'actual or constructive notice that its action or failure to act [was] substantially certain to result in a constitutional violation' and 'consciously or deliberately [chose] to disregard the risk of harm.'

*Murphy v. City of Tulsa*, 950 F.3d 641, 650-51 (10th Cir. 2019) (citations omitted). "'[D]eliberate indifference' is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action.'" *Connick v. Thompson*, 563 U.S. 51, 61 (2011) (citation omitted); *see City of Canton v. Harris*, 489 U.S. 378, 389 (1989) ("Only where a failure to train reflects a 'deliberate' or 'conscious' choice by a municipality—a 'policy' as defined by our prior cases—can a city be liable for such a failure under § 1983.").

Ordinarily, a plaintiff must be able to establish a pattern of constitutional violations of a similar nature by untrained employees to meet the stringent standard of deliberate indifference. *Waller v. City & Cty. Of Denver*, 932 F.3d 1277, 1285 (10th Cir. 2019). "Without notice that a course of training is deficient in a particular respect, decisionmakers can hardly be said to have deliberately chosen a training program that will cause violations of constitutional rights." *Id.* (quoting *Connick*, 563 U.S. at 62). "A less stringent standard of fault for a failure-to-train claim 'would result in *de facto respondeat superior* liability on municipalities . . . .'" *Connick*, 563 U.S. at 62 (quoting *City of Canton*, 489 U.S. at 392).

Plaintiff's allegations fall short of establishing municipal liability predicated on a failure to train. The Complaint conclusorily alleges that "[t]he Douglas County School District and Sheriff's Office have a pattern and practice of their employees and agents mishandling situations involving students with disabilities" (Doc. 1 ¶ 101), but it fails to set forth facts evidencing that DCSO employees had a pattern of using excessive force on students with disabilities at the time of Plaintiff's arrest. Plaintiff's allegations relate to DCSD, not to DCSO or its employees—and

even then, the allegations are general statistics not allegations demonstrating the use of excessive force.  (*See id.* ¶¶ 103-07.)   The Complaint impermissibly attributes the incident at bar to insufficient training notwithstanding Plaintiff's inability to plead facts evidencing any preexisting pattern of DCSO using excessive force on students with disabilities.  *See City of Okla. City v. Tuttle*, 471 U.S. 808, 823-24 (1985) (finding the inference of a "thoroughly nebulous policy" of inadequate training by the municipality from a single incident while sanctioning the inference that the policy caused the incident to circumvent *Monell*'s limitations entirely).

Apart from allegations pertaining to Plaintiff, the Complaint only asserts one single incident expressly alleged to involve a DCSO SRO which occurred after Plaintiff's arrest.  (Doc. 1 ¶ 108.)  As a matter of law, a subsequent event could not have placed DCSO on notice of a need for more or different training prior to Plaintiff's arrest.  *See Cordova v. Aragon*, 569 F.3d 1183, 1194 (10th Cir. 2009) ("basic principals of linear time prevent us from seeing how conduct that occurs *after* the alleged violation could have somehow caused that violation") (emphasis in original).  Accordingly, Plaintiff's § 1983 claim against DCSO must be dismissed.

## III.    CONCLUSION

WHEREFORE, for the reasons set forth above, the DCSO Defendants respectfully request that the Court grant their motion and dismiss Plaintiff's claims against them with prejudice.

Respectfully submitted this 10th day of May, 2021.

OFFICE   OF   THE   COUNTY   ATTORNEY
DOUGLAS COUNTY, COLORADO

*s/ Dawn L. Johnson*
Sean Kelly Dunnaway
Dawn L. Johnson
Megan L. Taggart
100 Third Street
Castle Rock, CO 80104
Telephone: (303) 660-7414

Email:kdunnawa@douglas.co.us;
djohnson@douglas.co.us;
mtaggart@douglas.co.us

*Attorneys for Defendants Tony Spurlock, in his official capacity; Sidney Nicholson; Lyle Peterson; and Daniel Coyle*

## <u>CERTIFICATE OF SERVICE</u>

**I HEREBY CERTIFY** that on this 10th day of May, 2021, I electronically filed the foregoing **DCSO DEFENDANTS' MOTION TO DISMISS** with the Clerk of Court using the CM/ECF system which will send notification of such filing to all parties of record.

<u>   */s/ Dawn L. Johnson*   </u>

*Pursuant to USDC ECF Procedure Version 6, a printed copy of this document with original signatures will be maintained by the Office of the Douglas County Attorney and made available for inspection upon request.*