IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 21-cv-00704-WJM-SKC

A.V., a child, through his mother and next friend, MICHELLE HANSON;

    Plaintiff,

v.

DOUGLAS COUNTY SCHOOL DISTRICT RE-1;
TONY SPURLOCK, the Douglas County Sheriff, in his official capacity;
SIDNEY NICHOLSON, a Douglas County School Resource Officer, in his individual capacity; LYLE PETERSON, a Douglas County School Resource Officer, in his individual capacity; DANIEL COYLE, a Douglas County School Resource Officer, in his individual capacity,

    Defendants.

## DEFENDANT DOUGLAS COUNTY SCHOOL DISTRICT RE-1'S MOTION TO DISMISS

Defendant Douglas County School District RE-1 (the "District"), hereby moves to dismiss Plaintiff A.V.'s claims against it pursuant to Fed. R. Civ. P. 12(b)(6), and joins arguments in Defendants Tony Spurlock (the "Sheriff"), Sidney Nicholson, Lyle Peterson, and Daniel Coyle's motion to dismiss for failure to state a claim, as follows:

<u>Certificate of Compliance</u>: Undersigned counsel certifies that as required by this Court's Practice Standards, he substantively conferred with opposing counsel by email and phone regarding the specific grounds for dismissal in this motion, and it is opposed.

### INTRODUCTION

This case concerns the arrest of a District student at school. A.V. complains that three Douglas County Sheriff's deputies—Nicholson, Peterson, and Coyle—who were serving as School Resource

Officers ("SRO"s) in the District, subjected him to excessive force. A.V.'s claims of disability discrimination and municipal liability against the District fail to state a claim and should be dismissed with prejudice.

## PLAINTIFF'S ALLEGATIONS AND CLAIMS

On August 29, 2019, A.V. was an 11-year-old sixth grader with autism and a serious emotional disability, attending Sagewood Middle School in the District. (Doc. 1, Pls.' Compl., ¶¶ 1, 10, 15, 18.)[1] He alleges that during class, a student wrote on him with a marker; A.V. responded by "poking" the student with a pencil, causing a small cut. (*Id.* at ¶¶ 24–25.) An aide texted school administrators, who reported to the classroom. (*Id.* at ¶¶ 27–28.) As requested, A.V. left the classroom, pushing past Principal Ben D'Ardenne, and sat down in an open area of the school between classrooms (*Id.* at ¶¶ 29–31.). A.V. then de-escalated. (*Id.* at ¶ 33.)

Meanwhile, D'Ardenne texted Nicholson, the school's assigned SRO, about the incident. (*Id.* at ¶ 34.) A.V. alleges SROs are joint employees of the Sheriff and the District, with the costs of salaries, benefits, and training split between them. (*Id.* at ¶¶ 6, 13, 86, 134, 147, 155.) When Nicholson arrived, D'Ardenne told him that A.V. "stabb[ed]" a classmate with a pencil. (*Id.* at ¶ 36.) D'Ardenne also told Nicholson that A.V. had serious emotional disabilities, and although he had calmed down, D'Ardenne expressed worry that A.V. may become re-escalated. (*Id.* at ¶¶ 38–39.) D'Ardenne and Nicholson discussed next steps, and D'Ardenne agreed to Nicholson's plan of asking A.V. to come talk with him in the SRO office at the school. (*Id.* at ¶¶ 39–40.) Nicholson, joined by his supervising SRO Peterson, approached A.V. and repeatedly asked him to come talk in the SRO office. (*Id.* at ¶¶

---

[1] As it must, the District accepts A.V.'s allegations as true solely for the purpose of this motion to dismiss his claims under Rule 12(b)(6).

42–44.) A.V.'s only response was to shake his head no. (*Id.*) Nicholson and Peterson then handcuffed A.V., overcoming behavior the SROs interpreted as violent resistance. (*Id.* at ¶¶ 45, 48–51, 52.) A.V. subsequently was pushed inside the SROs' patrol car and left there for over two hours while Nicholson collected witness statements. (*Id.* at ¶¶ 55, 62.) For some time, A.V. banged his head on the plexiglass and window of the patrol car. (*Id.* at ¶¶ 60–61, 63.)

A.V.'s stepfather arrived, and the SROs would not let him see A.V. (*Id.* at ¶¶ 66–67.) Despite the stepfather's request that A.V. be taken to Children's Hospital, SRO Coyle took A.V. to juvenile detention, where he was given no medical attention. (*Id.* at ¶¶ 70–71, 73.) A.V. was charged with multiple counts of assault, harassment, and resisting arrest, though the charges were later dropped. (*Id.* at ¶ 79.) The next morning, A.V. was examined by his pediatrician, and while he suffered no physical injuries beyond a headache, a small hematoma on his forehead, and swollen wrists, A.V. has demonstrated fear, distrust, and anxiety around law enforcement officers since the incident. (*Id.* at ¶¶ 80–82, 84.)

A.V. alleges that whatever training SROs receive is ineffective, inadequate, and leaves clear gaps in how to interact with students with disabilities. (*Id.* at ¶¶ 85, 87–90.) According to A.V., no SRO was disciplined after the incident. (*Id.* at ¶ 100.) Citing restraint data, a previous incident from 2015, a subsequent incident from 2019, and resolution agreements between the District and the Office for Civil Rights ("OCR"), A.V. alleges the Sheriff and the District have a pattern and practice of mishandling situations involving students with disabilities and either knew or should have known that further SRO training was needed. (*Id.* at ¶¶ 101–10.)

Based on these allegations, A.V. asserts three claims against the District—disability discrimination under Title II of the Americans With Disabilities Act ("ADA") and the Rehabilitation

Act ("Section 504"), as well as Fourth Amendment excessive force via 42 U.S.C. § 1983. (*Id.* at pp. 128–58.) The disability discrimination claims are also asserted against the Sheriff, and A.V. names all defendants in his Section 1983 claim. (*Id.*) The Sheriff, Nicholson, Peterson, and Coyle have moved to dismiss A.V.'s complaint pursuant to Rule 12(b)(1) and (6) (Doc. 23), and they seek a stay of all discovery due to the individual defendants' assertion of qualified immunity (Doc. 24).

## LEGAL STANDARD

A Rule 12(b)(6) motion challenges whether a complaint is legally sufficient to state a claim for which relief may be granted. *See Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1201 (10th Cir. 2003). A claim is properly dismissed under Rule 12(b)(6) if it "fails to allege sufficient facts to support a cognizable legal claim." *Essex Ins. Co. v. Tyler*, 309 F. Supp. 2d 1270, 1271 (D. Colo. 2004). In evaluating a Rule 12(b)(6) motion, well-pleaded factual allegations must be accepted as true and construed in the light most favorable to the plaintiff. *E.g. Alvarado v. KOB-TV, L.L.C.*, 493 F.3d 1210, 1215 (10th Cir. 2007). Legal conclusions, in contrast, need not be taken as true. *E.g. In re Zagg, Inc.*, 797 F.3d 1194, 1201 (10th Cir. 2015). To survive a motion to dismiss, a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation omitted). "[T]he plaintiff must do more than articulate a set of facts that could conceivably or possibly give rise to a claim; he must nudge his claim across the line from conceivable to plausible." *Havens v. Johnson*, 2012 WL 871195, at *3 (D. Colo. Mar. 13, 2012) (quotation omitted).

## ARGUMENT

### I. A.V. cannot establish the SROs were joint employees to support suing the District.

A.V. explicitly bases his ADA, Section 504, and Section 1983 claims against the District on

4

an allegation that Nicholson, Peterson, and Coyle were joint employees and agents of the Sheriff and the District. (Doc. 1, ¶¶ 6, 13, 134, 147, 155.) This allegation fails on its face, and as a result, his claims against the District should be dismissed under Rule 12(b)(6).

### A.  Sheriffs' deputies are not school district employees as a matter of law.

Colorado law does not allow A.V.'s joint employment theory. "Courts applying the joint-employer test treat independent entities as joint employers if the entities 'share or co-determine those matters governing the essential terms and conditions of employment.'" *Bristol v. Bd. of Cty. Comm'rs of Cty. of Clear Creek*, 312 F.3d 1213, 1218 (10th Cir. 2002) (quoting *Virgo v. Riviera Beach Assocs., Ltd.*, 30 F.3d 1350, 1360 (11th Cir. 1994)). "In other words, courts look to whether both entities 'exercise significant control over the same employees.'" *Bristol*, 312 F.3d at 1218 (quoting *Graves v. Lowery*, 117 F.3d 723, 727 (3d Cir. 1997)).

In *Bristol*, the Tenth Circuit, sitting en banc, concluded that under Colorado law, a board of county commissioners lacks the power to control the hiring, termination, or supervision of a sheriff's employees, or otherwise control the terms and conditions of their employment. 312 F.3d at 1219. This is because the Colorado Constitution establishes a sheriff as "a distinct position," *id.* (citing Colo. Const. art. XIV, § 8), "[s]heriffs have exclusive control over the hiring and firing of their employees," and the power to terminate is "exclusively vested in the Colorado Sheriffs with respect to their deputies," *Bristol*, 312 F.3d at 1219 (citing C.R.S. § 30-10-506; *Seeley v. Bd. of Cty. Comm'rs*, 791 P.2d 696, 700 (Colo. 1990)).

It necessarily follows here that the Sheriff is the *only* employer of Nicholson, Peterson, and Coyle, and as a matter of law, the District cannot be their joint employer. Even more so than a county, a school district is legally distinct from a sheriff; the District has its own constitutional authority,

Colo. Const. Art. IX, Sec. 15, and controls, among other things, its own funds, *see, e.g.*, C.R.S. § 22-21-110(1)(x). *Cf. Chavez v. Bd. of Cty. Comm'rs of Lake Cty., Colo.*, 426 F. Supp. 3d 802, 813 (D. Colo. 2019) (recognizing *Bristol* and noting Colorado Constitution does not create office of sheriff independent of county, and county must pay money judgment entered against sheriff).

### B. A.V. alleges no facts that the District exercised authority over SROs.

To the extent A.V. could argue the District had de facto authority over Nicholson, Peterson, and Coyle, there are no factual allegations in the complaint that would possibly establish any such control. Labeling the District a joint employer in conclusory fashion is not a well-pleaded fact. There are no allegations that suggest when or how an employment relationship was formed between the Defendants—let alone the nature of such a relationship. A.V. alleges the District and the Sheriff "split the costs of the SRO's salaries and benefits" (Doc. 1, ¶ 86), but paying for contracted services does not establish control. *See Bristol*, 312 F.3d at 1219 ("Budgetary power, in and of itself, does not establish the control necessary to treat the Sheriff and the Board as joint employers.").

Nor are there any allegations to support a plausible claim based on District authority over the Sheriff's employees. Indeed, the only inference that can be drawn from the complaint is that the District had no control over Nicholson, Peterson, and Coyle. A.V. alleges Principal D'Ardenne "agreed to" Nicholson's "plan" to ask A.V. to come with him to the SRO office to talk. (Doc. 1, ¶ 40.) Nicholson, however, did not follow the plan, after which D'Ardenne expressed his disappointment. (*Id.* at ¶¶ 46–58.) Nothing in these allegations remotely suggests D'Ardenne could have intervened, stopped the arrest, or otherwise exercised any control over the SROs.

### C. The SRO agreement establishes Nicholson, Peterson, and Coyle were only employed by the Sheriff.

In any event, A.V.'s allegation of joint employment is conclusively rebutted by the terms of

6

the SRO agreement between the District and the Sheriff. (Ex. A, IGA & Amends.) It is well established that a document referred to in a complaint, which is central to a claim, may be considered without converting a motion to dismiss to one for summary judgment. *E.g.*, *GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381, 1384 (10th Cir. 1997). This includes documents that are implicitly referenced. *Stonecipher v. Valles*, No. CV 11-417 BB/GBW, 2012 WL 12897894, at *4 (D.N.M. Jan. 5, 2012); *Obilo v. City Univ. of City of N.Y.*, No. CIV.A.CV-01-5118 DGT, 2003 WL 1809471, at *4 (E.D.N.Y. Apr. 7, 2003). "[O]therwise, a plaintiff with a deficient claim could survive a motion to dismiss simply by not attaching a dispositive document upon which the plaintiff relied." *GFF Corp.*, 130 F.3d at 1385. The Court similarly may take judicial notice of facts in documents that are matters of public record without converting a motion to dismiss. *Gardner v. Miami-Yoder Sch. Dist. JT-60*, 2010 WL 4537951, *1 (D. Colo. Nov. 3, 2010) (citing, *inter alia*, *Tal v. Hogan*, 453 F.3d 1244, 1265 n.24 (10th Cir. 2006)).

A.V. references the agreement between the District and the Sheriff when generally alleging joint employment and agency (Doc. 1, ¶¶ 6, 13, 134, 147, 155), as well as more specifically alleging the costs of SRO salaries and benefits were split (*id.* at ¶ 86). There can be no dispute that the written agreement establishing the parameters of SROs' employment and their control is central to A.V.'s claims against the District. As already stated, A.V. bases his ADA, Section 504, and Section 1983 claims on an allegation that Nicholson, Peterson, and Coyle were joint employees and agents of the District. (*Id.* at ¶¶ 6, 13, 134, 147, 155.) The agreement also is subject to judicial notice because it is a matter of public record under Colorado law. C.R.S. § 24-72-202(6)(a)(I); *cf. Gardner*, 2010 WL 4537951, at *1 (concluding same for board policies). Consequently, the SRO agreement is properly considered with this Motion without converting it to one for summary judgment.

Section 7 of the SRO agreement expressly addresses employment and control, and no personnel authority is given to the District. "Any member of the Sheriff's Office assigned to fulfill any services provided through this contract shall remain under control of the Sheriff's Office . . . ." (Ex. A, p. 2.) Indeed, the agreement provides that SROs "are subject to the Douglas County Sheriff's chain of command." (*Id.*) Although SROs are to "work closely with school administrators and faculty to determine the most effective use of the officers' time and expertise, they shall not be subject to supervision or direction by the District." (*Id.* at 3.) A.V.'s theory of joint employment cannot survive these provisions, as the SRO agreement must control over contrary allegations. *See GFF Corp.*, 130 F.3d at 1385 (citing, *inter alia*, 5 Wright & Miller, *Fed. Practice & Pro.* § 1327 & n. 14 (2d ed. 1990)). Unable to establish joint employment or agency, there is no basis for A.V.'s claims against the District.

**II.     A.V. fails to state a disability discrimination claim under the ADA or Section 504.**

A.V.'s ADA and Section 504 claims additionally fail on the elements. The ADA claim is a disability discrimination claim based on an alleged failure to accommodate during A.V.'s arrest and deliberate indifference to training SROs in dealing with disabled students. (Doc. 1, ¶¶ 129, 131, 135–36.) The Section 504 claim similarly alleges disability discrimination based on a lack of reasonable accommodation. (*Id.* at 143, 146.) The District joins the Sheriff's arguments in his motion to dismiss these claims under Rule 12(b)(6).

As the Sheriff argues, it is not clear that such claims may even arise from an arrest. *See J.H. ex rel. J.P. v. Bernalillo Cty.*, 806 F.3d 1255, 1261 (10th Cir. 2015) (citing cases). In addition, there are no allegations the SROs acted based on A.V.'s disability; as the Sheriff emphasizes, the complaint can only establish A.V. was arrested due to his conduct. *Cf. id.* at 1260 ("It was that battery, rather

8

than a disability, that led to the arrest."); *accord J.V. v. Albuquerque Pub. Schs.*, 813 F.3d 1289, 1298 (10th Cir. 2016). Nor as the Sheriff points out, are there sufficient allegations to support any actual failure to accommodate A.V. because no request was made, *see id.* at 1299; *J.H.*, 806 F.3d at 1261–62, and the accommodations A.V. now proposes would not have been reasonable, *cf. id.* (rejecting notion that declining to arrest student and take her to juvenile detention center would have been reasonable accommodations).

A.V. nonetheless alleges Nicholson, Peterson, and Coyle "knew that accommodations were necessary under Douglas County Sheriff's Office policies, but were indifferent to an obvious risk of not providing the accommodations." (Doc. 1, ¶ 133.) This misperceives what A.V. must establish. The need for an accommodation must have been "obvious" and specifically tied to A.V. *See Robertson v. Las Animas Cty. Sheriff's Dep't*, 500 F.3d 1185, 1197–98 (10th Cir. 2007); *see also J.H.*, 806 F.3d at 1261 ("For example, if a disabled individual uses a wheelchair, courts might require law enforcement officers to secure the wheelchair when making an arrest."). Nothing in the complaint supports a plausible inference that A.V. obviously needed an accommodation from the SROs. Indeed, when Nicholson and Peterson encountered A.V., he "was sitting calmly." (Doc. 1, ¶ 41.)

To the extent A.V. intends to argue the alleged failure to train amounted to a failure to accommodate, the Tenth Circuit has repeatedly rejected that theory of disability discrimination during an arrest. *Scott v. City of Albuquerque*, 711 F. App'x 871, 885 (10th Cir. 2017) (citing, *inter alia*, *J.V.*, 813 F.3d at 1297). For good reason. It is illogical that the District would be required to ensure SROs are specifically trained not to intentionally discriminate against disabled students. *See Sturdivant v. Blue Valley Unified Sch. Dist., USD 229*, 469 F. Supp. 3d 1121, 1134 (D. Kan. 2020) ("[C]ourts have recognized that the illegality of race discrimination and retaliation is patently obvious

to all and, accordingly, have rejected failure-to-train claims based on a municipality's failure to train employees on those topics."). In a comparable context, the Tenth Circuit has emphasized that male police officers do not need formal training to know they are not supposed to inappropriately touch female inmates. *Bates v. Bd. of Cty. Comm'rs*, 674 F. App'x 830, 833–34 (10th Cir. 2017).

Regardless, as the Sheriff argues, the allegations here cannot establish any deliberate indifference that could support a theory of intentional disability discrimination. The Sheriff argues as much applied to his office, and the same must be said for the District. "Deliberate indifference requires both knowledge that a harm to a federally protected right is substantially likely, and a failure to act upon that . . . likelihood." *J.V.*, 813 F.3d at 1298 (quotation omitted). In the context of an alleged failure to train, the Tenth Circuit "require[s] a showing that the defendant was on notice of the need for more or different training." *Id.* (quotation omitted). The failure to act also "must be more than negligent and involve an element of deliberateness." *Id.* (quotation omitted). A.V.'s allegations cannot meet this standard. Just one prior incident involving an SRO's arrest of a District student is alleged, but A.V.'s minimal recitation says nothing about intentional discrimination. (Doc. 1, p. 16.) Even if it did, one prior incident—given the numerous restraints generally alleged to occur—did not put the District on notice of any problem. *Waller v. City & Cty. of Denver*, 932 F.3d 1277, 1287 (10th Cir. 2019) ("[W]e have found no cases suggesting that a single prior incident can constitute a 'pattern' of conduct giving rise to an inference of deliberate indifference.") (citing cases). Accordingly, A.V.'s ADA and Section 504 claims against the District should be dismissed.

### III. A.V.'s Section 1983 claim fails to establish a deliberately indifferent failure to supervise or train by the District.

A.V.'s Fourth Amendment excessive force claim against the District under Section 1983 additionally should be dismissed. The District joins the Sheriff's municipal liability arguments in his

10

motion to dismiss this claim under Rule 12(b)(6).

As the Sheriff argues, the complaint fails to establish the SROs violated A.V.'s constitutional right against application of excessive force. "In the school context, the traditional Fourth Amendment reasonableness standard is somewhat relaxed." *A.B. ex rel. B.S. v. Adams-Arapahoe 28J Sch. Dist.*, 831 F. Supp. 2d 1226, 1241 (D. Colo. 2011) (citing *New Jersey v. T.L.O.*, 469 U.S. 325, 341 (1985)). The reasonableness of a seizure is a question of law. *Couture v. Bd. of Educ. of Albuquerque Pub. Sch.*, 535 F.3d 1243, 1249 (10th Cir. 2008) (citation omitted). "To balance the students' privacy rights with the schools' custodial and tutelary responsibility for children, a seizure need only be justified at its inception and reasonably related in scope to the circumstances which justified the interference in the first place." *A.B.*, 831 F. Supp. 2d at 1241 (citing *Couture,* 535 F.3d at 1250). "The Court must consider the totality of the circumstances," including "the objectives of the seizure," "the age and sex of the student[,] and the nature of the infraction." *A.B.*, 831 F. Supp. 2d at 1241 (citing, *inter alia*, *United States v. Shareef,* 100 F.3d 1491, 1505 (10th Cir. 1996)).

When Nicholson and Peterson arrived at the school, they allegedly were told that A.V., who was 11 years old, had stabbed a classmate with a pencil. (Doc. 1, ¶¶ 10, 36.). They also allegedly were told A.V. had serious emotional disabilities, and D'Ardenne expressed worry that A.V. may become re-escalated. (*Id.* at ¶¶ 38–39.) A.V. repeatedly refused to come talk with the SROs in their office; according to the complaint, he did not engage beyond shaking his head no. (*Id.* at 42, 44.) It cannot be said on these allegations that the SROs acted unreasonably in using force to restrain A.V. At the time A.V. was restrained, the SROs had probable cause to arrest him, and they had reason to be concerned about the safety of other students, as A.V. was in an open area between classrooms. (Doc. 1, ¶ 31.)

Furthermore, similar to the Sheriff's argument, there is no basis to hold the District liable because A.V. has not pled facts evidencing a pattern of excessive force prior to his arrest that could have put the District on notice of deficient SRO supervision or training. To succeed on such a claim, A.V. "must demonstrate the supervisor's inaction was the result of deliberate indifference." *A.B.*, 831 F. Supp. 2d at 1245 (citing *Graves v. Thomas*, 450 F.3d 1215, 1218 (10th Cir. 2006)). There also must be "a strong causation showing," such that the District, through deliberate conduct, "is the moving force behind the injury alleged." *A.B.*, 831 F. Supp. 2d at 1245 (citing *Bd. of County Comm'rs of Bryan Cty. v. Brown*, 520 U.S. 397, 404 (1997)).

As already discussed above regarding the disability discrimination claims, the allegations here cannot establish any deliberate indifference by the District. It makes no sense that the District would have any duty to train contracted SROs how to conduct arrests without excessive force or supervise the Sheriff's law enforcement training. Such responsibilities must lie with the Sheriff, and A.V. alleges they do, stating that per the Sheriff's policy, "all officers are trained in recognizing mental health and related disorders, including autism, and trained in de-escalation techniques." (Doc. 1, ¶ 87.) To be sure, a governmental entity may have reason to question the quality of contracted services, but the standard is high. "A pattern of similar constitutional violations by untrained employees is ordinarily necessary to demonstrate deliberate indifference for purposes of failure to train." *Sanchez v. City of Littleton*, 491 F. Supp. 3d 904, 922 (D. Colo. 2020) (quoting *Connick v. Thompson*, 563 U.S. 51, 61 (2011)). One prior incident of possible excessive force, again, does not make a pattern. Also, the district-wide restraint data cited by A.V. is completely silent about the degree of force that may or may not have been applied, and A.V.'s reference to OCR resolution agreements is similarly ineffective because there is no indication in the complaint that those agreements had anything to do

with arrests or SROs. (Doc. 1, ¶¶ 103–05, 110.) *Cf. Trujillo v. City & Cty. of Denver*, No. 16-CV-1747-WJM-MJW, 2017 WL 1364691, at *7 (D. Colo. Apr. 14, 2017) (allowing Section 1983 claim to proceed where plaintiff alleged numerous incidents of excessive force without discipline, including four involving individual defendant police officer).

A.V.'s allegations finally fall short on causation. As detailed above, there are only conclusory allegations of joint employment. (Doc. 1, ¶¶ 6, 13, 134, 147, 155.) A.V. does not allege splitting costs somehow means any particular person in the District has supervisory authority over SROs. Nor does A.V. allege such a person had knowledge of deficient training before the incident and could have done anything about it. *Cf. Rehberg v. City of Pueblo,* 10-cv-00261-LTB-KLM, 2012 WL 1326575, at *5 (D. Colo. Apr. 17, 2012) (dismissing municipal liability claim where plaintiff did not identify individuals who allegedly failed to adequately supervise or train). Given that Colorado law does not allow sheriffs to limit their authority over the officers they employ, *Seeley,* 791 P.2d at 700, there ultimately can be no allegation that the District was a moving force in what happened to A.V.

## CONCLUSION

For the foregoing reasons and as the Sheriff argues in his motion to dismiss, A.V.'s claims against the District fail to state any claim on which relief can be granted and should be dismissed with prejudice pursuant to Rule 12(b)(6).

RESPECTFULLY SUBMITTED this 24th day of May, 2021.

    SEMPLE, FARRINGTON, EVERALL & CASE, P.C.

    By: *s/Jonathan P. Fero*
        M. Brent Case
        Jonathan P. Fero
        M. Johnathan Koonce
        1120 Lincoln Street, Suite 1308
        Denver, CO  80203

(303) 595-0941
bcase@semplelaw.com
jfero@semplelaw.com
jkoonce@semplelaw.com

## CERTIFICATE OF SERVICE

I hereby certify that on the 24th day of May, 2021, a correct copy of the foregoing **DEFENDANT DOUGLAS COUNTY SCHOOL DISTRICT RE-1'S MOTION TO DISMISS** was filed via CM/ECF and served on the following:

Jack D. Robinson
SPIES, POWERS & ROBINSON, P.C.
1660 Lincoln St, Suite 2220
Denver, CO 80264
(303) 830-7090
robinson@sprlaw.net

Mark Silverstein
Sara R. Neel
Arielle Herzberg
American Civil Liberties Foundation
303 E. 17th Ave Ste. 350
Denver, CO 80203
(720) 402-3104
msilverstein@aclu-co.org
sneel@aclu-co.org
aherzberg@alcu-co.org
*Attorneys for Plaintiff*


Sean Kelley Dunnaway
Dawn L. Johnson
Megan L. Taggart
Office of the County Attorney, Douglas County, Colorado
100 Third Street
Castle Rock, CO 80104
(303) 660-7414
kdunnawa@douglas.co.us
djohnson@douglas.co.us
mtaggart@douglas.co.u
*Attorneys for Defendants Tony Spurlock,*
*Sidney Nicholson, Lyle Peterson and Daniel Coyle*

By: *s/ Kathleen Schmidt*