**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 21-cv-00704-WJM-SKC

A.V., a child, through his mother and next friend, MICHELLE HANSON,

    Plaintiff,

v.

DOUGLAS COUNTY SCHOOL DISTRICT RE-1, *et al.*

    Defendants.

---

**DCSO'S RESPONSE TO STATEMENT OF INTEREST
OF THE UNITED STATES OF AMERICA [DOC. 51]**

---

Defendant Tony Spurlock, in his official capacity ("DCSO"), through the Douglas County Attorney's Office, respectfully submits the following response to the Statement of Interest of the United States of America (Doc. 51, "SOI") filed in the above-captioned matter.[1]

## INTRODUCTION

Plaintiff's claims in this lawsuit challenge his arrest, detention, and transport to a juvenile detention facility after he assaulted a student at while at school. Plaintiff alleges that he has autism and that DCSO discriminated against him because of his disability during the arrest, detention, and transport in violation of his rights under Title II and Section 504.[2] Although Plaintiff does not dispute that his assault of another student was unlawful, Plaintiff contends that he was both

---

[1] DCSO jointly filed a motion to dismiss along with Sidney Nicholson, Lyle Peterson and Daniel Coyle (collectively with Sidney Nicholson and Lyle Peterson, the "Deputies"). (Doc. 23, "Motion".) The SOI addresses only the reasonable accommodation claim asserted by Plaintiff under Title II of the Americans with Disabilities Act ("Title II") and Section 504 of the Rehabilitation Act ("Section 504), claims which are not directed against the Deputies.

[2] The substantive standards applicable to Title II and Section 504 claims are the same. *Gohier v. Enright*, 186 F.3d 1216, 1219 (10th Cir. 1999); *Cunningham v. Univ. of M.M. Bd. of Regents*, 531 F.App'x 909, 919 (10th Cir. 2013). Accordingly, as in its Motion, DCSO's reference to Title II or the ADA is intended to include reference to the Rehabilitation Act.

1

wrongfully arrested and denied reasonable accommodation in violation of Title II. Plaintiff also alleges that DCSO and the Deputies, individually, subjected him to excessive force in violation of his Fourth Amendment rights by using handcuffs.

DCSO and the Deputies subsequently filed a Motion seeking the dismissal of Plaintiff's claims. On June 24, 2021, the United States filed a SOI in this proceeding challenging arguments raised by DCSO regarding Plaintiff's reasonable accommodation claims. The SOI does not challenge DCSO's assertion that Plaintiff cannot establish a claim for wrongful arrest under Title II. (Doc. 51 at 2-3 & n.4.) Likewise, the United States does not take issue with any arguments of DCSO or the Deputies that Plaintiff has no basis for a § 1983 claim premised on an alleged excessive use of force. (*Id.*)

In its SIO, the United States urges the Court to conclude that Title II unequivocally authorizes accommodation claims such as those asserted by Plaintiff in the context of an arrest of a student with emotional disabilities. The United States' arguments are contrary to Tenth Circuit law. The United States also contends that a public entity is indisputably liable under Title II for the deliberately indifferent conduct of any of its employees. The plain language of Title II, and the well-reasoned analysis of recent federal court decisions construing Title II, as well Title VI of the Civil Rights Act of 1964 ("Title VI") and similar statutory provisions, dictate otherwise. Ultimately, the SOI fails to provide persuasive grounds for allowing Plaintiff's reasonable accommodation claim against DCSO to proceed.

## DISCUSSION

I. **This Case Does Not Present A Viable Title II Accommodation Claim.**

   A. **Whether and to what extent Title II requires accommodation in the context of an arrest is an open question.**

DCSO's Motion does not argue that the ADA has no application to arrests; it notes the lack

of definitive authority on whether and to what extent Title II applies to arrests. (Doc. 23 at 3, 5-6.) As the SOI acknowledges, several of the circuit courts confronting such claims have declined to expressly decide these issues. (Doc. 51 at 3 n.5.) The Tenth Circuit has announced on multiple occasions that it has not decided whether to adopt a failure to accommodate theory of liability under Title II in the context of arrests. *E.g.*, *J.H. ex rel. J.P. v. Bernalillo Cty.*, 806 F.3d 1255, 1261 (10th Cir. 2015); *Gohier v. Enright*, 186 F.3d 1216, 1221 (10th Cir. 1999). Other circuits have taken a similar approach. *See*, *e.g.*, *King v. Hendricks Cty. Comm'rs*, 954 F.3d 981, 989 (7th Cir. 2020) (observing that the issue of whether and to what extent Title II applies to law enforcement arrests and investigations is an open question in the circuit and assuming without deciding that Title II applied to law enforcement's response to a 911 call); *Gray v. Cummings*, 917 F.3d 1, 16-18 (1st Cir. 2019) (finding the differing approaches among the various circuit courts counseled in favor of caution and declining to answer the question of whether and to what extent Title II applies to ad hoc police encounters). The Fifth Circuit has gone further, affirmatively limiting the applicability of Title II:

> [W]e hold that Title II does not apply to an officer's on-the-street responses to reported disturbances or other similar incidents, whether or not those calls involve subjects with mental disabilities, prior to the officer's securing the scene and ensuring that there is no threat to human life. Law enforcement personnel conducting in-the-field investigations already face the onerous task of frequently having to instantaneously identify, assess, and react to potentially life-threatening situations. To require the officers to factor in whether their actions are going to comply with the ADA, in the presence of exigent circumstances and prior to securing the safety of themselves, other officers, and any nearby civilians, would pose an unnecessary risk to innocents. While the purpose of the ADA is to prevent the discrimination of disabled individuals, we do not think Congress intended that the fulfillment of that objective be attained at the expense of the safety of the general public.

*Hainze v. Richards*, 207 F.3d 795, 801 (5th Cir. 2000).

Although the circuit courts' approaches to analyzing the theoretical viability of an ADA claim in the context of an arrest have varied, the circuit courts have routinely rejected the actual

3

claims asserted. *See*, *e.g.*, *King*, 954 F.3d at 989 (assuming Title II applied but rejecting plaintiff's failure to accommodate claim in connection with law enforcement's welfare check on an individual with paranoid schizophrenia in response to a 911 call); *Gray*, 917 F.3d at 16-17 (assuming Title II applied but rejecting the plaintiff's claim of failure to accommodate her bipolar disorder); *Haberle v. Troxell*, 885 F.3d 170, 180-83 (3d Cir. 2018) (concluding "the ADA can indeed apply to police conduct during an arrest" but finding the plaintiff's allegations that the public entity had a history of violating residents' civil rights and that the public entity's conduct fell below national standards for police departments interacting with individuals with mental illness failed to demonstrate deliberate indifference); *Roberts v. City of Omaha*, 723 F.3d 966, 973 (8th Cir. 2013) (finding Title II applied to law enforcement officers taking disabled suspects into custody but rejecting schizophrenic's claim that law enforcement officers failed to accommodate his disability when securing him and taking him into custody); *Seremeth v. Bd. of Cty. Comm'rs Frederick Cty.*, 673 F.3d 333, 339 (4th Cir. 2012) (finding the ADA applicable to police investigations but holding the plaintiff, who was deaf, had not established a claim for failure to provide reasonable accommodation); *Bircoll v. Miami-Dade Cty.*, 480 F.3d 1072, 1085-86 (11th Cir. 2007) (finding "[t]he exigent circumstances presented by criminal activity and the already onerous tasks of police on the scene go more to the reasonableness of the requested ADA modification than whether the ADA applies in the first instance" but rejecting the plaintiff's claim that law enforcement failed to reasonably accommodate his deafness in connection with his arrest for drunk driving).

The Court need not delve into unsettled legal issues surrounding the accommodation theory advanced in the SOI. *See Gray*, 917 F.3d at 17-18 ("we have admonished before—and today reaffirm—that 'courts should not rush to decide unsettled legal issues that can easily be

4

avoided[]'"); *see also Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011) ("Courts should think carefully before expending 'scarce judicial resources' to resolve difficult and novel questions of constitutional or statutory interpretation that will 'have no effect on the outcome of the case.'"). Much like the Tenth Circuit has done, this Court can assume without deciding that Title II requires reasonable accommodations in the context of arrest because Plaintiff's Complaint does not plead facts that would support an accommodation claim.

### B. DCSO's analysis of Plaintiff's accommodation claim is consistent with applicable law.

The United States also takes issue with DCSO's Motion because it "suggest[s] that A.V.—despite his age, the school context, and known disability—was required to request a reasonable modification during the course of his arrest." (Doc. 51 at 2.) The United States' position misconstrues DCSO's argument; DCSO did not argue that reasonable accommodations are only necessary when a disabled individual expressly requests an accommodation.

In the Tenth Circuit:

A public entity must provide a reasonable accommodation under the ADA when it knows that the individual is disabled and 'requires an accommodation of some kind to participate in or receive the benefits of its services.' '[A] public entity is on notice that an individual needs an accommodation when it knows that an individual requires one, either because that need is obvious or because the individual requests an accommodation.'

*J.V. v. Albuquerque Pub. Sch.*, 813 F.3d 1289, 1299 (10th Cir. 2016). Knowledge of a disability alone will not place a public entity on notice of a disabled individual's need for an accommodation unless the need is obvious. Deeming notice of a disability as notice of an individual's need for accommodation "conflates a disability with a need for accommodation." *J.H.*, 806 F.3d at 1261.

To the extent the United States views Plaintiff's lack of any request for accommodation as irrelevant to the issue of whether the Deputies knew that Plaintiff required an accommodation because of his age, the school setting and his alleged disability, the Tenth Circuit has concluded

otherwise.  In *J.H.*, the Tenth Circuit considered a reasonable accommodation claim brought on behalf of an eleven-year-old student with special needs who assaulted her teacher at school. 806 F.3d at 1256-57.  The Tenth Circuit explained that "*[i]f* a police officer incurs a duty to reasonably accommodate a person's disability during arrest," the duty could only arise if the police officer knew the individual needed an accommodation.  *Id.* at 1261 (emphasis added).  In concluding that the police officer at issue did not know the student needed an accommodation, the Court specifically relied on the fact that the eleven-year-old disabled student in a school setting never asked the police officer to make an accommodation.  *Id.*  *J.H.* squarely contradicts the United States' suggestion that Plaintiff's failure to ask that the Deputies make any accommodation for him is irrelevant for purposes of determining whether the Deputies knew that Plaintiff needed an accommodation because he was an eleven-year-old disabled student in a school setting.

Plaintiff's lack of any request for an accommodation is significant here because he is alleged to suffer from emotional disabilities.  The SOI offers no authority concluding that knowledge an individual has been diagnosed with a disability that qualifies as an emotional disability is sufficient to put either a law enforcement officer specifically or a public entity generally on notice that the individual requires accommodation because the need is "obvious." Rather, the United States relies on decisions recurringly addressing an unrelated disability as potentially creating an obvious need for accommodation—deafness.  (Doc. 51 at 6); *cf. Robertson v. Las Animas Cty. Sheriff's Dept.*, 500 F.3d 1185, 1188 (10th Cir. 2007); *Sacchetti v. Gallaudet Univ.*, 344 F. Supp. 3d 233, 271-72 (D.D.C. 2018); *see also Delano-Pyle v. Victoria Cty.*, 302 F.3d 567, 574-75 (5th Cir. 2002) (finding a "public entity is liable for the vicarious acts of *any* of its employees as specifically provided by the ADA" under Title II based on the definition of 'employer' in Title I); *Duvall v. Cty. of Kitsap*, 260 F.3d 1124, 1136-37 (9th Cir. 2001).  The Tenth

Circuit has rejected the notion that emotional disabilities and similar disabilities, such as those alleged by Plaintiff, obviously require accommodation such that mere knowledge of the disability alone provides notice of a need for accommodation. *See Scott v. City of Albuquerque*, 711 F.App'x 871, 885 (10th Cir. 2017) (officer's knowledge of student's diagnosis with disability would not, without more, make officer aware that student needed an accommodation); *J.H.*, 806 F.3d at 1261 (holding allegations that officer knew of student's alleged disability did not establish that officer knew of student's need for accommodation, explaining the argument "conflates a disability with a need for accommodation").

Presumably recognizing that Plaintiff concedes not having requested any form of accommodation and that Plaintiff's alleged disabilities are not of a type that have been found to obviously require accommodation in the context of arrest, the United States also argues that Plaintiff's parents or school personnel could have informed the Deputies of Plaintiff's need for reasonable accommodation in conjunction with his arrest and that Plaintiff's Complaint includes allegations that Plaintiff's stepfather and the school principal made statements to one or more Deputies that could be construed as having placed the Deputies on notice of a need for accommodation. The general statements alleged and relied on in the Complaint were not requests for the range of possible modifications the United States asserts were options at the time. In any event, and critically for purposes of DCSO's Motion, any failure to provide a reasonable accommodation must have been deliberately indifferent to be actionable. In the Tenth Circuit, a failure to act, such as is alleged here, cannot be merely negligent conduct; a plaintiff must be able to demonstrate an element of deliberateness in the claimed failure to act. *J.V.*, 813 F.3d at 1298. Although DCSO's Motion challenges the sufficiency of Plaintiff's allegations in this respect, the United States does not take issue with DCSO's arguments that Plaintiff has not pled facts

7

evidencing a deliberate failure to provide Plaintiff with a reasonable accommodation either on the part of the Deputies or of DCSO.

## II. DCSO Is Not Vicariously Liable Under Title II For The Acts Of The Deputies Alleged In The Complaint.

### A. Title II should not be construed to provide for vicarious liability on the part of public entities.

Much like its argument about the applicability of Title II in the context of arrests, the United States maintains that vicarious liability under Title II is a settled issue. To the contrary, the issue is far from settled, and careful consideration of the plain language of the ADA and recent federal authority counsel against imposing liability on public entities where that liability is based on vicarious liability.

The United States maintains that the plain text of Title II's implementing regulations authorizes vicarious liability. The United States' reliance on language in the regulations extending Title II "to all services, programs, and activities provided or made available by public entities" and prohibiting discrimination "directly or through contractual, licensing or other arrangements" is unavailing. This text does not, on its face, "impose[ ] liability on a public entity for the discriminatory conduct of its employees, agents, contractors, licenses, and others." (Doc. 51 at 11.). Furthermore, construing this regulatory text as so extending liability would impermissibly conflict with the plain language of the ADA, which expressly defines employers covered under Title I to *include* their agents but omits comparable language in defining public entities covered by Title II. 42 U.S.C. § 12111(5)(A); 42 U.S.C. § 12131(1); *see also Arthur v. D.C. Housing Auth.*, No. 18-cv-2037 (DLF), 2020 WL 1821111, *11 (D.D.C. Apr. 11, 2020) ("the plain text of Title II of the ADA for not provide for vicarious liability, in contrast to other provisions in the ADA"); *cf. K Mart Corp. v. Cartier, Inc.*, 486 U.S. 281, 291 (1988) ("If the statute is clear and unambiguous, 'that is the end of the matter, for the court, as well as the agency, must give effect

8

to the unambiguously expressed intent of Congress.'").

The United States' argument also ignores Title II's adoption of the remedies available under Title VI. 42 U.S.C. § 12133; 29 U.S.C. § 794a; *see also U.S. v. Fla.*, 938 F.3d 1221, 1227 (11th Cir. 2019) ("Through a series of cross-references, the enforcement mechanism for Title II of the ADA is ultimately Title VI of the Civil Rights Act of 1964.").[3] The United States did not dispute that Title VI does not allow for recovery of money damages based on vicarious liability, particularly in the wake of the Supreme Court's decision in *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 277 (1998). (*See* Doc. 23 at 9-10); *see also Rodgers v. Smith*, 842 F.App'x 929, 929 (5th Cir. 2021) ("Title VI allows neither personal liability claims against individuals nor vicarious liability claims against employers for the acts of their employees."); *Foster v. Mich.*, 573 F.App'x 377, 389 (6th Cir. 2014) ("*Gebser*'s interpretation that there is no vicarious[ ] liability under Title IX supports the notion that there is no vicarious liability under Title VI."). Nevertheless, the SOI does not explain why the scope of remedies available under Title VI, and ultimately adopted in Title II, should not apply in this instance. The United States' position is incongruous with the plain language of Title II for this reason as well. *See Three Rivers Ctr. for Indep. Living v. Housing Auth. of City of Pittsburgh*, 382 F.3d 412, 426 (3d Cir. 2004) (finding the scope of a private right of action under Section 504 to be co-extensive with that available under Title VI).

Several federal courts confronted with the question of whether Title II permits vicarious liability for public entities have reiterated that the availability of vicarious liability under Title II is an open question if not outright rejected the availability of vicarious liability. *E.g.*, *King*, 954

---

[3] In fact, in *United States v. Florida*, the United States successfully argued that the remedies, procedures and rights available for enforcing Title II *should* be evaluated by cross-referencing the remedial structure of Title VI. 938 F.3d at 1228.

F.3d at 988-89; *Gray*, 917 F.3d at 17; *see also Liese v. Indian River Cty. Hosp. Dist.*, 701 F.3d 334, 349 (11th Cir. 2012); *Arthur v. D.C. Housing Auth.*, No. 18-cv-2037 (DLF), 2020 WL 1821111, *11 (D.D.C. Apr. 11, 2020); *Hooper v. City of St. Paul*, No. 17-CV-3442 (PJS/DRS), 2019 WL 4015443, *9 (D. Minn. Aug. 26, 2019). The United States Supreme Court is notably among this contingent, specifying that it has never decided whether a public entity can be vicariously liable for money damages for purposeful or deliberately indifferent conduct by its employees. *City & Cty. of San Francisco v. Sheehan*, 575 U.S. 600, 610 (2015).

The United States dismisses the substantial statutory and decisional authority weighing against vicarious liability, arguing that "all circuit courts to resolve this question have unanimously held that a state or local government employer is vicariously liable for the acts of its employees or agents who violate Title II." (Doc. 51 at 12.) *Liese* demonstrates otherwise. 701 F.3d at 349 (finding *Gebser*, "which flatly rejects the use of respondeat superior and constructive notice principles[,]" to be the "correct standard" for resolving whose discriminatory intent may be imputed to an entity for purposes of evaluating liability under Section 504). Moreover, the decisions upon which the United States relies may hold open the theoretical possibility of imposing vicarious liability on a public entity, they typically refuse to do so. (*See* Doc. 51 at 11-12 n. 10); *cf. King*, 954 F.3d at 989 (rejecting ADA claims asserted against public entity where the plaintiff failed to establish that individual officer's response would have been different if someone not suffering from mental illness had done the same thing and failed to identify what training the public entity should have offered that would have prevented the alleged injury); *Gray*, 917 F.3d at 18-19 (finding the plaintiff had failed to establish either vicarious or direct liability against the public entity defendant); *Rosen v. Montgomery Cty.*, 121 F.3d 154, 158-59 (4th Cir. 1997) (rejecting the plaintiff's accommodation claims arising from his arrest and transport to the police station for

drunk driving, further concluding that "[i]f we assume . . . the police were required to provide auxiliary aids at some point in the process, that point certainly cannot be placed before the arrival at the stationhouse. The police do not have to get an interpreter . . . to stop a suspected drunk driver, conduct a field sobriety test, and make an arrest."); *see also Hooper*, 2019 WL 4015443, at \*9-\*10 (rejecting the persuasiveness of *Delano-Pyle*, *Duvall* and *Rosen* regarding the availability of vicarious liability under Title II because "a close examination of the text of the two statutes strongly suggests that Congress did not intend to open the door to vicarious liability" and "the Supreme Court found that a materially identical statute—Title IX of the Education Amendments of 1972—does not establish vicarious liability").

### B. The Deputies' conduct does not qualify as that of DCSO under *Gebser*.

Finally, the United States asserts that DCSO can still be directly liable for the conduct of the Deputies because they may qualify as "officials" under *Gebser*.[4] The United States' argument ignores the absence of factual allegations in Plaintiff's Complaint that could support such an inference.

In *Gebser*, the Supreme Court concluded that Title IX of the Education Amendments of 1972 ("Title IX"), which was modeled off of Title VI, did not permit the recovery of damages for claims of discrimination against covered federal funding recipients where liability was premised on theories of vicariously liability or constructive notice. 524 U.S. at 288. The Court concluded that Title IX did not allow for a damages remedy "unless an official who at a minimum has authority to address the alleged discrimination and to institute corrective measures on the

---

[4] The SOI asserts that DCSO can also be directly liable under Title II if Plaintiff was injured as a result of a DCSO policy or practice that was maintained despite knowing of a strong likelihood that it would to violations of the ADA but claims that Defendants have not addressed this theory of direct liability. (Doc. 51 at 14.) Presumably, the United States means only that DCSO has not challenged the general viability of Title II claims asserting direct liability by a public entity predicated on its policies. Plaintiff alleges that DCSO had a policy or practice of failing to adequately train its deputies, and DCSO's Motion specifically challenges the sufficiency of Plaintiff's factual allegations to support such a claim. (*E.g.*, Doc. 23 at 10-12.)

recipient's behalf has actual knowledge of discrimination in the recipient's programs and fails to adequately respond." *Id.* at 290. The Court went on to conclude that, for liability to attach, the recipient's response must amount to deliberate indifference, explaining:

> The administrative enforcement scheme presupposes that an official who is advised of a Title IX violation refuses to take action to bring the recipient into compliance. The premise, in other words, is an official decision by the recipient not to remedy the violation. That framework finds a rough parallel in the standard of deliberate indifference. Under a lower standard, there would be a risk that the recipient would be liable in damages not for its own official decision but instead for its employees' independent actions.

*Id.* at 290-91.

The United States' argument that the conduct of rank and file deputies could be construed as an "official decision" by DCSO does not comport with *Gebser*. From a pleading perspective, the Complaint does not allege facts from which it may be inferred that any of the Deputies had the authority implement corrective action on behalf of DCSO as an entity. From a practical perspective, the United States' position cannot be reconciled with the Supreme Court's directive in *Gebser* that entities are not liable for their employees' independent actions. Both considerations counsel against adopting the United States' expansive construction of who qualifies as an "official" under *Gebser*.

## **CONCLUSION**

WHEREFORE, for the reasons set forth herein and in its briefing on the Motion, DCSO respectfully requests that the Court grant its Motion to dismiss Plaintiff's Title II and Section 504 claims against it and award it such other and further relief as the Court deems appropriate.

Respectfully submitted this 15th day of July, 2021.

                                              OFFICE OF THE COUNTY ATTORNEY
                                              DOUGLAS COUNTY, COLORADO

                                              *s/ Dawn L. Johnson*
                                              Sean Kelly Dunnaway

>Dawn L. Johnson
>Megan L. Taggart
>100 Third Street
>Castle Rock, CO 80104
>Telephone: (303) 660-7414
>Email:kdunnawa@douglas.co.us;
>djohnson@douglas.co.us;
>mtaggart@douglas.co.us
>
>*Attorneys for Defendant Tony Spurlock, in his official capacity*

13

## CERTIFICATE OF SERVICE

  **I HEREBY CERTIFY** that on this 15th day of July, 2021, I electronically filed the foregoing **DCSO'S RESPONSE TO STATEMENT OF INTEREST OF THE UNITED STATES OF AMERICA [DOC. 51]** with the Clerk of Court using the CM/ECF system which will send notification of such filing to all parties of record.

              */s/ Dawn L. Johnson*

*Pursuant to USDC ECF Procedure Version 6, a printed copy of this document with original signatures will be maintained by the Office of the Douglas County Attorney and made available for inspection upon request.*