## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. 21-cv-00704-WJM-SKC

A.V., a child, through his mother and next friend, MICHELLE HANSON;

      Plaintiff,

v.

DOUGLAS COUNTY SCHOOL DISTRICT RE-1;
TONY SPURLOCK, the Douglas County Sheriff, in his official capacity;
SIDNEY NICHOLSON, a Douglas County School Resource Officer, in his individual capacity;
LYLE PETERSON, a Douglas County School Resource Officer, in his individual capacity;
DANIEL COYLE, a Douglas County School Resource Officer, in his individual capacity,
Defendants.

---

### DCSO DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT

---

Defendants Tony Spurlock, in his official capacity ("DCSO"), Sidney Nicholson, Lyle Peterson and Daniel Coyle (collectively with Sidney Nicholson and Lyle Peterson, the "Deputies"), through the Douglas County Attorney's Office, hereby move, pursuant to Fed. R. Civ. P. 12(b)(1) and (6), for dismissal of the claims asserted against them in Plaintiff's First Amended Complaint and Jury Demand (Doc. 86-2, "Complaint"), and in support thereof, state as follows:

**STATEMENT PURSUANT TO WJM REVISED PRACTICE STANDARD III(D)(1)**:
Undersigned counsel certifies, as required by this Court's Practice Standards, that on March 28, 2022, she substantively conferred with Plaintiff's counsel regarding the specific grounds for dismissal and the request for this Court to consider the proposed exhibits in this motion.   Plaintiff opposes this motion in its entirety.

## INTRODUCTION

This case concerns the arrest of a Douglas County School District student while at school. A.V., an eleven-year-old middle school student, complains that three Douglas County Sheriff's deputies, while serving as School Resource Officers ("SRO"s), denied A.V. reasonable accommodations, discriminated against him solely as a result of his disability, and subjected him to excessive force and unreasonable seizure.

In its Order on Motion to Dismiss (Doc 84), this Court found two plausible claims had been stated against Douglas County under the Americans with Disabilities Act ("ADA"): (1) wrongful arrest of someone with a disability if the deputies misperceived the effects of that disability as criminal activity; and (2) failure to reasonably accommodate the person's disability while investigating and arresting that person for a crime unrelated to that disability.

Plaintiff ("A.V.") has now filed his First Amended Complaint ("Complaint"), bringing three claims against DCSO, alleging violations of Title II of the ADA ("Title II"), the Rehabilitation Act ("Section 504"), and 42 U.S.C. § 1983 for the alleged unreasonable seizure and use of excessive force in violation of his Fourth Amendment rights.  (Doc. 86-2 ¶¶ 32-36).  The 42 U.S.C. § 1983 claim is also brought against the Deputies.  (*Id.* at ¶¶ 36-38).

There has been a change in circumstances that warrants a full review of the footage from the body-worn camera ("BWC") the Deputies utilized throughout the incident.  At the time of A.V.'s initial complaint, only select clips of the BWC from the incident were provided to and published by various news channels.[1]  The clips were provided to numerous news outlets for public

---

[1] Jennifer McRae, *ACLU Files Lawsuit Against Douglas County School District, Sheriff After 11-Year-Old With Autism Handcuffed*, CBS News Colorado, March 9, 2021 at 8:30 pm, https://denver.cbslocal.com/2021/03/09/child-autism-handcuffs-aclu-douglas-county/; Stephanie Butzer, Blair Miller, *ACLU lawsuit claims DougCo. School resource officers handcuffed child with autism for hours*, ABC Denver News, March 9, 2021 at 5:53 pm, https://www.thedenverchannel.com/news/local-news/aclu-lawsuit-claims-dougco-school-resource-officers-

dissemination despite the state court expunging the juvenile's criminal case records after A.V. successfully fulfilled the diversion program requirements. A.V. failed to share pertinent details of what led to his arrest, the necessity of handcuffs, and the accommodations provided to A.V. throughout the incident, as indisputably captured in the entire BWC, as well as to disclose a candid description of the disposition of his related juvenile delinquent ("JD") case.

DCSO was initially precluded from commenting on the juvenile criminal case or providing the "missing" BWC footage by a state court order expunging the records. Since that time, in its Protective Order (Doc 83, ¶ 4), this Court ordered the parties to use those expunged records pursuant to the terms of that Order. Moreover, the BWC and expunged JD case records may be properly considered under Rule 12(b)(6) because they are either (1) referred to in the Complaint and central to A.V.'s claims, or (2) subject to judicial notice. DCSO Defendants respectfully request the Court to review the entire BWC files and to take judicial notice of the state court's finding of probable cause for the warrantless arrest of A.V. and the charges filed, and A.V.'s entry into and successful completion of a statutory diversion program for the "dropped" criminal case without converting this motion to one for Summary Judgment.

## PLAINTIFF'S ALLEGATIONS AND CLAIMS

A.V. "poked" a student with a pencil—a stab that was serious enough to break the skin and create an approximate one-inch cut on the student's arm. (*Id.* ¶ 26) The Principal and Dean of Students were summoned to the classroom. (*Id.* ¶¶ 28-29) A.V. was told to leave the classroom, and the Principal texted the school resource officer ("SRO") asking for help. (*Id.* ¶¶ 30, 36) Two SROs (Deputies Nicholson and Peterson) arrived at the school in response to the text and were

---

handcuffed-child-with-autism-for-hours; Michael Konopasek, ACLU of Colorado sues DougCo school district, sheriff after autistic child handcuffed, FOX 31 Denver, March 10, 2021 at 10:13 am, https://kdvr.com/news/local/aclu-of-colorado-sues-dougco-school-district-sheriff-after-autistic-child-handcuffed/.

informed that another student had asked A.V. to stop doing something and A.V. had responded by "stabbing" the student with a pencil. (*Id.* ¶¶ 37-38) The Deputies were informed that: the school had called A.V.'s parents, A.V. has serious emotional disabilities, and although A.V. had calmed down, there was concern A.V. would become "re-escalated" and he should be moved. (*Id.* ¶¶ 39-41) Initially, it was agreed that Deputy Nicholson would ask A.V. to come talk with him in the SRO office. (*Id.* ¶ 42) Deputy Nicholson repeatedly asked A.V. to come talk with him; A.V.'s only response was to shake his head no. (*Id.* ¶¶ 45, 47) At some point, the Deputies handcuffed A.V., overcoming behavior they interpreted as violent resistance, and took A.V. out of the building to the patrol car. (*Id.* ¶¶ 51, 54-57, 59-60) A.V. remained handcuffed while seated in the patrol car during which A.V. banged his head against the plexiglass. (*Id.* ¶¶ 62-63, 66) For more than two hours, Deputy Peterson supervised A.V. while Deputy Nicholson collected witness statements. (*Id.* ¶ 68) At some point after A.V. had been arrested, his stepfather arrived at the school and was not permitted to see A.V. (*Id.* ¶¶ 73-74) The Deputies transported A.V. to the Foote Center. (*Id.* ¶¶ 78-79, 82) A.V. was subsequently charged with two counts of assault, two counts of harassment, and one count of resisting arrest. (*Id.* ¶ 88)

## LEGAL STANDARD

"As a general rule, a 12(b)(1) motion cannot be converted into a motion for summary judgment under Rule 56." *Wheeler v. Hurdman,* 825 F.2d 257, 259 (10th Cir.1987). "Unlike the strict limitations under 12(b)(6) against considering matters outside the complaint, a 12(b)(1) motion is considered a 'speaking motion' and can include references to evidence extraneous to the complaint without converting it to a Rule 56 motion." *Id.* at 259 n. 5. To resolve a motion that challenges the factual basis for subject matter jurisdiction, "a court has wide discretion to allow

affidavits, documents, and even a limited evidentiary hearing to resolve disputed jurisdictional facts under 12(b)(1)." *Id.*

A Rule 12(b)(6) motion allows a defendant to file a motion seeking dismissal based on a plaintiff's "failure to state a claim upon which relief can be granted." "Although qualified immunity defenses are typically resolved at the summary judgment stage, district courts may **grant motions to dismiss on the basis of qualified immunity.**" *Thomas v. Kaven*, 765 F.3d 1183, 1194 (10th Cir. 2014). "At the motion to dismiss stage, it is the defendant's conduct as alleged in the complaint that is scrutinized for objective legal reasonableness." *Id.* Though the evidence must be viewed in the light most favorable to the non-moving party, the "record must clearly demonstrate the plaintiff has satisfied his heavy burden; otherwise, the defendants are entitled to qualified immunity." *Felders ex rel. Smedley v. Malcom*, 755 F.3d 870, 878 (10th Cir. 2014) (quoting *Medina v. Cram*, 252 F.3d 1124, 1128 (10th Cir. 2001)). "Put simply, qualified immunity protects 'all but the plainly incompetent or those who knowingly violate the law.'" *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)).

To survive a motion to dismiss under Rule 12(b)(6), a complaint's factual allegations, assumed to be true, must "raise a right to relief above the speculative level" and must contain "enough facts to state a claim to relief that is plausible on its face" *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007), but asserted legal conclusions need not be taken as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555). The Court need not accept conclusory allegations without supporting factual averments. *Southern Disposal, Inc. v. Tex. Waste Mgmt.*, 161 F.3d 1259, 1262 (10th Cir. 1998). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

**ARGUMENT**

**I.    Consideration of DCSO Defendants' exhibits is appropriate.**

The Court should consider the BWC footage without converting the Motion to one for summary judgment because (1) the footage is indisputably authentic; (2) A.V. references the footage in his Complaint; (3) the BWC footage is "central" to A.V.'s claims for relief; and (4) the BWC footage is a dispositive document that blatantly contradicts A.V.'s allegations. Generally, a court considers only the contents of the complaint when ruling on a Rule 12(b)(6) motion. *Gee v. Pacheco*, 627 F.3d 1178, 1186 (10th Cir. 2010). "If, on a motion under Rule 12(b)(6) ..., matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." *Johnson v. Spencer*, 950 F.3d 680, 705 (10th Cir. 2020) (quoting Fed. R. Civ. P. 12(d)). A court may, however, consider documents that are attached to the complaint or incorporated by reference into the complaint without converting a 12(b)(6) motion to a motion for summary judgment. *GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381, 1384 (10th Cir. 1997). "[I]f a plaintiff does not incorporate by reference or attach a document to its complaint, but the document is referred to in the complaint and is central to the plaintiff's claim, a defendant may submit an indisputably authentic copy to the court to be considered on a motion to dismiss." *Id. See also Cronick v. City of Colorado Springs,* No. 20-cv-00457-CMA-KMT, 2022 WL 124751 (D.Colo. Jan. 13, 2022) (The court considered, only to the extent that it clearly contradicted the allegations in the complaint, defendants' exhibits in a motion to dismiss of audio and video recordings taken from the responding officers' BWC.)

In addition to the fact A.V. used numerous select quotes and a single static image taken from the BWC throughout his Complaint without attaching these same recordings he extensively relies on (Doc. 86-2, ¶¶ 26-27, 38-42, 45-47, 49, 51, 52, 54, 56-57, 59, 61, 64-65, 74-78), the entire

BWC captured the exact interactions between the Deputies and A.V. that are the basis of A.V.'s claims. *See* Exhibits A, B, C.  Moreover, the BWC contents should control where there is a blatant conflict between the allegations in the Complaint and the irrefutable evidence within the BWC. Additionally, judicial notice should be taken of A.V.'s state judicial records in his related JD case (Exhibits D-E), the state's diversion program pursuant to C.R.S. §§ 19-2.5-401 – 402 (2021), and the expungement of juvenile delinquent records under C.R.S. § 19-1-306 because they "concern[] matters that bear directly upon the disposition of the case at hand," *United States v. Ahidley*, 486 F.3d 1184, 1192 n.5 (10th Cir. 2007), and A.V. referred to the criminal charges filed against him and the case disposition in his Complaint. (Doc. 86-2 ¶¶ 4, 87-88).  Based on the above, the contents of these documents and the entire BWC footage, not only may be considered but should control where there is a clear conflict with A.V.'s allegations without converting this motion to dismiss into a motion for summary judgment.

## II.     Plaintiff has not pled a violation of Title II and Section 504 of the ADA.

A.V. alleges DCSO denied A.V. reasonable accommodation and discriminated against him solely because of his disability.  A.V. asserts the de-escalation process should have continued indefinitely through school staff intervention rather than having an SRO intervene in a law enforcement capacity at all as the reasonable accommodation he is entitled to under the ADA and Section 504. (Doc. 86-2, ¶ 2)  Under Title II of the ADA, "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."  42 U.S.C. §12132.  To state a claim under Title II, a plaintiff must prove: (1) that he or she is a qualified individual with a disability; (2)that he or she was either excluded from participation in or denied the benefits of some public entity's services, programs, or activities, or

was otherwise discriminated against by the public entity; and (3) that such exclusion, denial of benefits, or discrimination was by reason of the plaintiff's disability.

*Gohier v. Enright*, 186 F.3d 1216, 1219 (10th Cir. 1999).  The substantive standards applicable to a Section 504 claim are the same.[2]  *Id.*; *Cunningham v. Univ. of M.M. Bd. of Regents*, 531 F.App'x 909, 919 (10th Cir. 2013).   Courts have recognized three ways to establish a discrimination claim: (1) intentional discrimination; (2) disparate impact; and (3) failure to make a reasonable accommodation. *J.V. v. Albuquerque Public Schools*, 813 F.3d 1289, 1295 (10th Cir. 2016).

### A. A.V.'s arrest was for his criminal conduct rather than his disability.

The factual allegations underlying the claims against DCSO and the Deputies (collectively, "DCSO Defendants") mirror those already considered and rejected by the Tenth Circuit in *J.H. ex rel. J.P. v. Bernalillo County*, 806 F.3d 1255, 1260 (10th Cir. 2015). In *J.H. ex rel. J.P.*, an eleven-year-old student with special needs was arrested, handcuffed, and transported to the juvenile detention center after the student had kicked a teacher.  The court held that the deputy could arrest the child without violating the Fourth Amendment based on suspicion the child had committed the crime of kicking her teacher; following arrest, taking a child to juvenile detention center while keeping her in handcuffs did not constitute excessive force based on the deputy's concern for safety and need to control the situation; the arrest did not constitute discrimination in violation of the ADA because the arrest was made based on suspicion the child had committed a crime not based on her disability; and the deputy did not violate the ADA by failing to reasonably accommodate the child's alleged disability without knowledge of a needed accommodation. *Id*.  In *J.H. ex rel. J.P.*, the plaintiff "presumably believe[d] that [the deputy] should have declined to arrest [the child]

---

[2]   Considering this substantive overlap, the two claims are addressed collectively, and reference to one Act should be construed as a reference to both.

and take her to a juvenile detention center" to accommodate the child's learning disorder as required by the ADA; however, the court held that even supposing the deputy knew the child had a learning disability, these actions were permissible under state law and the Fourth Amendment because there was probable cause the child had committed a crime. *Id*. at 1261-62.  Here, neither party disputes the Deputies had probable cause to arrest A.V. for his unlawful conduct.  However, like the plaintiff in *J.H. ex rel. J.P.*, A.V. asserts the Deputies should have declined to intervene in any law enforcement capacity despite A.V. having committed multiple crimes of violence.

The Deputies could lawfully restrict A.V.'s freedom of movement by escorting him to the SRO office, the patrol car and to a juvenile detention center based on probable cause to arrest A.V. for assault and battery.  *See Hedgepeth ex rel. Hedgepeth v. Wash. Metro. Area Transit Auth.,* 386 F.3d 1148, 1156 ("The law of this land does not recognize a fundamental right to freedom of movement when there is probable cause for arrest.")  For safety concerns, the Deputies lawfully kept A.V. in handcuffs for the trip to the detention center. *See Fisher v. City of Las Cruces,* 584 F.3d 888, 893–96 (10th Cir.2009) (holding that the Fourth Amendment was not violated by a law enforcement officer's decision to handcuff an individual suspected of a petty misdemeanor, reasoning that the Supreme Court has "recognized that handcuffing was an appropriate response to officer-safety concerns even during investigative detentions.")

**B.  Reasonable accommodation was provided during the arrest.**

The Deputies were informed A.V. had assaulted multiple people to include a student and staff, had caused significant disruption in his class, had serious emotional disabilities, was not highly verbal and had a history of self-harm.  ADA regulations require public entities to "make reasonable modifications in policies, practices or procedures when the modifications are necessary to avoid discrimination on the basis of disability" when it knows that an individual requires one.

*Robertson v. Las Animas Cnty. Sheriff's Dep't*, 500 F.3d 1185, 1195 (10th Cir. 2007); see also 28 C.F.R. §35.130(b)(7).  Although A.V. was calm when the principal relayed to the Deputies his safety and privacy concerns if A.V. became "re-escalated" while in the open pod, and that he had already unsuccessfully tried to move A.V. to an office.  Additionally, the BWC indicates the principal had closed all classroom doors to preserve A.V.'s privacy and certainly as a safety precaution, since students would be present when they moved between class periods. *See* Exhibits A, B.  Under the unique facts of this case, any reasonable officer weighing the obvious safety and privacy concerns with the need to accommodate A.V. would want to move A.V. away from an open area where he would be out of plain view to an enclosed area for everyone's safety, to include his own.

Moreover, reasonable modifications were made that align with those delineated in the Statement of Interest filed by the Department of Justice.  As discussed above,  A.V. was removed from the classroom, the school psychologist sat with A.V. in an open pod to calm the situation, school staff closed classroom doors to limit the visibility of the incident, the parents of A.V. had been contacted, for privacy and safety concerns school staff unsuccessfully attempted to move A.V. to an office away from an open area where other students would soon be present, and the school psychologist endeavored to de-escalate and communicate with A.V. and the Deputies so that A.V. would willingly walk with him to the office and cooperate with the Deputies. The Deputies spoke calmly to A.V., wiped his nose, offered him water, maintained safety precautions and reasoned with him throughout the incident. *See* Exhibits A, B, C.

Only after many requests by the principal, psychologist, and the Deputies for A.V. to walk to the SRO office voluntarily and calmly, the Deputies reasonably attempted to physically move A.V. by taking hold of A.V.'s arms and making him walk to the office.  Instead of complying,

A.V. violently resisted posing a threat to himself, the Deputies and others nearby.  A.V.'s flailing, head butting, and kicking were minimized when he was placed in handcuffs and secured in a patrol car. *See* Exhibits A, B, C. Furthermore, any request by A.V. to remove his handcuffs was not a reasonable modification based on the totality of circumstances and particularly the imminent threat of harm towards himself and others.

Perhaps most importantly, review of the BWC clearly shows A.V. did not repeatedly bang his head against the patrol car plexiglass for hours. After one incident the Deputies immediately intervened and placed a seatbelt around A.V. for his safety.  At no time during his arrest was A.V. left unsupervised or alone in a patrol car.  As soon as the Deputies received clearance from the detention center, A.V. was transported. *See* Exhibits A, B, C. Because Title II claims require a showing that a public entity acted "by reason of" a person's disability, and because A.V. has failed to provide evidence that the Deputies took any action by reason of A.V.'s disability, their claims fail.

To recover compensatory damages under Title II of the ADA, courts generally require a showing of intentional discrimination. *See Powers v. MJB Acquisition Corp*., 184 F.3d 1147, 1153 (10th Cir. 1999). In the Tenth Circuit, intentional discrimination can be inferred if the public entity was deliberately indifferent to the plaintiff's rights under the ADA. *See Barber v. Colo. Dep't of Revenue*, 562 F.3d 1222, 1228-29 (10th Cir. 2009); *see also J.V. v. Albuquerque Pub. Schs*., 813 F.3d 1289, 1298 (10th Cir. 2016). "Deliberate indifference requires both knowledge that a harm to a federally protected right is substantially likely, and a failure to act upon that . . . likelihood." *Barber*, 562 F.3d at 1228-29 (quoting *Duvall v. Cnty. of Kitsap*, 260 F.3d 1124, 1139 (9th Cir. 2001)). The BWC blatantly contradict A.V.'s allegations the Deputies intentionally violated

A.V.'s rights, such as his right to reasonable modifications during the arrest process.  Throughout the incident, the Deputies accommodated A.V. as described above.

III.     **Plaintiff has failed to establish a basis for liability under 42 U.S.C. § 1983.**

The Deputies had probable cause to arrest A.V. and to use handcuffs when he violently resisted.  "The Fourth Amendment prohibition on unreasonable seizures bars police officers from using excessive force to seize a free citizen."  *Graham v. Connor*, 490 U.S. 386, 395 (1989). For this inquiry, *Graham* encourages the evaluation of three factors: "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." 490 U.S. at 396.

The first factor considers the severity of the underlying offense(s).  At the time the Deputies handcuffed A.V., they knew A.V. had committed offenses for stabbing another student with a pencil causing injury, and for kicking, shoving, and hitting a teacher.  Assault is an offense that can be considered violent if committed by any person, even a child.

The second factor identified in *Graham*, is whether the suspect poses an immediate threat to the safety of the officer or others.  Although A.V. had calmed down in the company of the school psychologist, the principal raised concern that A.V. would become re-escalated and needed to be moved to a closed office away from the open area where other students would be present. Here, the review of the BWC clearly contradicts A.V.'s allegations the Deputies "abruptly approached" in a "threatening manner" and "aggressively handcuffed him" after he was calm, not posing a threat and not attempting to flee. (Doc. 86-2 ¶¶ 51, 172)  Only after numerous requests for A.V. to walk willingly to the SRO office and his steadfast refusal, the Deputies took hold of A.V.'s arms to escort him, albeit unwillingly, to the SRO office. Exhibits A, B at 0:07:25-0:08:25. However, A.V. then violently resisted by pulling away, thrashing, and attempting to bite the

Deputies.   The Deputies' lost their grip of A.V.'s arms enough that he was able to thrust his forehead twice into a wall and kick at the Deputies thereby posing an immediate threat not only to himself, but also to the Deputies and others who were nearby. A.V.'s further attempts to bite, head-butt, and kick the Deputies were significantly minimized once he was placed in handcuffs and secured in a patrol car. Exhibits A, B at 0:08:26-0:15:00.

The third factor discussed in *Graham*, is whether the suspect is actively resisting arrest or attempting to evade arrest by flight.   As soon as the Deputies began to escort A.V. to the SRO office, he violently resisted as described above.   The Deputies did not misperceive lawful conduct caused by A.V.'s disability as criminal activity and then arrest him for that conduct.   A.V.'s conduct was not lawful.   Moreover, the Court may take judicial notice of A.V.'s JD case finding probable cause for his warrantless arrest, holding A.V. responsible for the criminal charges to include resisting arrest, and requiring him to successfully complete the diversion program before granting expungement. *See* Exhibits D, E.

It is disingenuous for A.V. to now claim he was unlawfully seized and arrested immediately after completing diversion and his case expunged.   The Complaint fails to establish that the actions of any of the Deputies constituted a violation of A.V.'s constitutional rights, and further, the law is clearly established that the Deputies' actions were reasonable in arresting and handcuffing A.V., including through the duration of his transport to the juvenile detention center, for well-grounded safety concerns and the need to control the situation.

## IV.   The Deputies are entitled to qualified immunity.

The Deputies are qualifiedly immune from A.V.'s Fourth Amendment claims.   In the absence of a constitutional violation, any municipal liability claim also fails.   Moreover, A.V. has not pled a cause of action for municipal liability based on an alleged failure to train because the

Complaint has not pled facts evidencing a *pattern* of excessive force *prior* to A.V.'s arrest that could have put DCSO on notice that its training program was deficient.  "Individual defendants named in a § 1983 action may raise a defense of qualified immunity, which shields public officials . . . from damages actions unless their conduct was unreasonable in light of clearly established law." *Gutierrez v. Cobos*, 841 F.3d 895, 899 (10th Cir. 2016) (internal quotation marks omitted). Once raised, the plaintiff bears the burden of establishing first, "that the defendant's actions violated a constitutional or statutory right," and second, "that the right at issue was clearly established at the time of the defendant's unlawful conduct." *Albright v. Rodriguez,* 51 F.3d 1531, 1534 (10th Cir.1995). "If the plaintiff fails to carry either part of his two-part burden, the defendant is entitled to qualified immunity." *Id.,* 51 F.3d at 1535. If the plaintiff succeeds in carrying his burden, then the burden shifts to "the defendant to show that there are no disputes of material fact as to whether his conduct was objectively reasonable in light of clearly established law and the information known to the defendant at the time." *Felders ex rel. Smedley v. Malcom,* 755 F.3d 870, 877 (10th Cir.2014) (quoting *Mick v. Brewer,* 76 F.3d 1127, 1131 (10th Cir.1996)).

As discussed above, A.V. has failed to establish the Deputies violated any constitutional or statutory right.  Moreover, the Tenth Circuit has previously found that there is no clearly established law indicating that a plaintiff's minor status can negate an officer's customary right to take hold of an arrestee's arms or place an arrestee in handcuffs during a lawful arrest. *A.M v. Holmes*, 830 F.3d 1123, 1151 (10th Cir. 2016) (an officer's "right to make an arrest necessarily carries with it the right to use some degree of physical coercion to effect it.").

## V.     The scope, extent, or degree of non-de minimis injuries required for a jury trial is not less onerous for minors.

Precedent requires a showing in a handcuffing case of an actual, non-de minimis physical,

emotional, or dignitary injury to succeed on a claim regardless of the age of the plaintiff. *See Fisher v. City of Las Cruces*, 584 F.3d 888, 899 (10th Cir. 2009); *A.M.*, 830 F.3d at 1151-52; *Cortez v. McCauley*, 478 F.3d 1108, 1129 (10th Cir. 2007) (en banc) ("We believe that a claim of excessive force requires some actual injury that is not de minimis, be it physical or emotional."). "This is because '[h]andcuffing claims, in essence, concern the manner or course in which a petitioner is handcuffed,' and '[b]ecause handcuffing itself is not necessarily an excessive use of force in connection with an arrest.' " *A.M.*, 830 F.3d at 1152 (alterations in original) (quoting *Fisher*, 584 F.3d at 897); *cf. United States v. Rodella*, 804 F.3d 1317, 1327 (10th Cir. 2015), *cert. denied*, ___ U.S. ___, 137 S.Ct. 37, 196 L.Ed.2d 26 (2016) (concluding that *Cortez*'s non-de-minimis-injury requirement "is limited to handcuffing cases").

## CONCLUSION

WHEREFORE, for the reasons set forth above, the DCSO Defendants respectfully request that the Court grant their motion and dismiss Plaintiff's claims against them with prejudice.

Respectfully submitted this 1st day of April 2022.

OFFICE OF THE COUNTY ATTORNEY DOUGLAS COUNTY, COLORADO

*s/Amy F. Edwards*
Amy F. Edwards
Sean Kelly Dunnaway
Meira N. Hertzberg
100 Third Street
Castle Rock, CO 80104
Telephone: (303) 660-7414
Email: aedwards@douglas.co.us
kdunnawa@douglas.co.us
mhertzberg@douglas.co.us

*Attorneys for Defendants Tony Spurlock, in his official capacity; Sidney Nicholson; Lyle Peterson; and Daniel Coyle*

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on this 1st day of April 2022, I electronically filed the foregoing **DCSO DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT** with the Clerk of Court using the CM/ECF system which will send notification of such filing to all parties of record.

*/s/ Patrick Fiedler*

*Pursuant to USDC ECF Procedure Version 6.1, a printed copy of this document with original signatures will be maintained by the Office of the Douglas County Attorney and made available for inspection upon request.*