IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.  21-cv-00704-WJM-SKC

A.V., a child, through his mother and next friend, MICHELLE HANSON;

    Plaintiff,

v.

DOUGLAS COUNTY SCHOOL DISTRICT RE-1, *et al.*

    Defendants.

**STATEMENT OF INTEREST OF THE UNITED STATES OF AMERICA**

The United States respectfully submits this Statement of Interest[1] to clarify that, under Title II of the Americans with Disabilities Act (ADA), a school district is liable for discrimination in its programs, services, or activities even when it provides them through contractual, licensing, or other arrangements.  In the pending motion to dismiss, the Douglas County School District (School District) appears to claim that it escapes liability for the actions of the school resource officers (SROs) because the SROs were not the School District's employees.  Whether or not the School District employed the SROs, however, is not the relevant question pending before the Court.  If the SROs, in any of their interactions with Plaintiff A.V., were acting as part of a program, service, or activity of the School District, then the School District can be liable for the SROs' actions.  A public entity cannot contract away its ADA obligations.  *Marks v. Colorado Department of Corrections*, 976 F.3d 1087, 1097 (10th Cir.

---

[1] The Attorney General is authorized "to attend to the interests of the United States" in any case pending in federal court.  28 U.S.C. § 517.

2020).  Thus, it does not matter whether the SROs are jointly employed by the School District and the Douglas County Sheriff's Office (Sheriff) or solely by the Sheriff.  What matters for purposes of potential liability is whether the alleged discrimination occurred in a program, service, or activity of that school district.

Congress charged the Department of Justice with implementing Title II of the ADA by promulgating regulations, issuing technical assistance, and bringing suits in federal court to enforce the statute.  42 U.S.C. §§ 12133-12134, 12206.  Of particular relevance here, the Title II regulation specifies that a "public entity, in providing any aid, benefit, or service, may not, *directly or through contractual, licensing, or other arrangements*, [discriminate] on the basis of disability."  28 C.F.R. § 35.130(b)(1) (emphasis added).  The United States has a strong interest in the proper interpretation and application of Title II's implementing regulation.

## PROCEDURAL AND FACTUAL BACKGROUND

In August 2019, Plaintiff A.V. was an eleven-year-old student at Sagewood Middle School, a public school in the School District.  Am. Compl. ¶¶ 1, 16, ECF No. 86-1.[2]  A.V., who has autism spectrum disorder and a serious emotional disorder, alleges that three school resource officers[3] (SROs) violated his rights under Title II of the ADA by, among other things, interrupting the de-escalation process with the school psychologist, arresting him, and leaving

---

[2] On a motion to dismiss, the Court must accept all the well-pleaded allegations of the complaint as true and must construe them in the light most favorable to the plaintiff.  *Alvarado v. KOB-TV, L.L.C.*, 493 F.3d 1210, 1215 (10th Cir. 2007) (internal quotations and citation omitted).

[3] A school resource officer is defined under Colorado State law as "a peace officer…who has specialized training…to work with school staff and students and who is assigned to a public school or charter school for the purpose of creating a safe learning environment and responding to all non-hazard threats that may impact the school."  Colo. Rev. Stat. § 22-32-109.1(1)(g.5).

him handcuffed and locked in a patrol car for several hours.[4] *Id*. at ¶¶ 1, 2, 6, 16, 146-151. A.V. originally argued that the SROs were jointly employed by the Sheriff and the School District and that, as joint employers, both the Sherriff and the School District are liable under the ADA for the SRO's discriminatory actions. Compl. ¶ 147, ECF No. 1. The School District moved to dismiss the complaint, arguing that it did not jointly employ the SROs. Def.'s Mot. Dismiss Compl. at 4-8, ECF No. 28. The Court found that A.V. failed to allege sufficient facts to establish a joint-employer relationship and dismissed A.V.'s ADA claims against the School District without prejudice and with leave to amend. Order at 30, 33, ECF No. 84., Compl. ¶ 147, ECF No. 1.

In his amended complaint, A.V. no longer asserts that the School District jointly employs the SROs. Am. Compl. Redline at ¶¶ 6, 14, 153, 129, 177. Instead, A.V. alleges that the "School District is liable [for the actions of the SROs] because it contracted to place SROs in its school and the SRO program is a program of the School District." Am. Compl. at ¶ 152. The School District moved to dismiss the amended complaint, again asserting that the School District cannot be liable under Title II for the actions of the SROs because the School District is not the SRO's joint employer. Def.'s Mot. Dismiss Am. Compl. at 11-14, ECF No. 96. The School District failed to address A.V.'s new allegation that the School District is liable because it contracts with the SROs to implement a program of the District.

---

[4] Plaintiff's amended complaint also alleges violations of Section 504 of the Rehabilitation Act, 29 U.S.C. § 794. Am. Compl. ¶¶ 162-196. Because the ADA and the Rehabilitation Act involve the same substantive standards and are generally subject to the same analysis, our discussion applies to both claims. *See Miller ex rel. S.M. v. Bd. of Educ. of Albuquerque Pub. Schs.*, 565 F.3d 1232, 1245 (10th Cir. 2009); 34 C.F.R. § 104.4(b)(1) (U.S. Department of Education regulation implementing Section 504 of the Rehabilitation Act using the "contractual, licensing, or other arrangements" language); *see also* 42 U.S.C. § 12201(a) (stating that the ADA should not be construed to apply a lesser standard that those applied under the Rehabilitation Act).

The School District acknowledges that it is authorized to implement programs to keep its schools safe. Def.'s Mot. Dismiss Am. Compl. at 13 (citing Colo. Rev. Stat. § 22-32-109.1(2)(a)(I)), ECF No. 96. According to the amended complaint, the School District has partnered with the Sheriff to place SROs in schools and to maintain an SRO program. Am. Compl. ¶ 92.a. A.V. and the School District agree that the SROs were assigned to A.V.'s middle school pursuant to an Intergovernmental Agreement (contract) entered into by the School District and the Board of County Commissioners, State of Colorado, on behalf of the Sheriff's Office. Am Comp. at ¶ 92.a, Def.'s Mot. Dismiss Am. Compl., Ex. A, ECF No. 91-1. According to the amended complaint, the main purpose of the SRO program is to benefit the School District. Am. Compl. ¶ 92.g, j. The School District's superintendent is required to develop procedures for the employment, training, and use of SROs, and procedures for communication between district officials and law enforcement. Am. Compl. ¶ 92.l. The building principal is responsible for the supervision and implementation of the safe school program at his or her school, including the SRO program. Am. Compl. ¶ 92.m.

## DISCUSSION

**I.    A PUBLIC ENTITY MAY BE LIABLE UNDER TITLE II OF THE ADA FOR THE ACTIONS OF NON-EMPLOYEES PROVIDING THE PUBLIC ENTITY'S SERVICES, PROGRAMS, AND ACTIVITIES THROUGH CONTRACTUAL, LICENSING, OR OTHER ARRANGEMENTS.**

In its motion to dismiss the amended complaint, the School District asserts that it cannot be liable under Title II for the actions of the SROs because, based on the facts as alleged in the amended complaint, A.V. fails to establish a joint-employer relationship. Def.'s Mot. Dismiss Am. Compl. at 11-14. But the joint employer theory is not the only way that a Title II entity, like a school district, can be liable for discrimination against a student based on the actions of SROs. Indeed, Title II of the ADA creates an affirmative obligation on a public entity to avoid

3

discrimination in the provision of any of its services, programs, and activities. *See generally* 28 C.F.R. § 35.130. This legal obligation remains when providing its services, programs, or activities either directly or through contractual or other arrangements. This is true even where a Title II entity, such as a school district, contracts with another Title II entity, such as a sheriff's office, to provide services for one of its programs. Put simply, school districts cannot divest themselves of responsibility for the lawful administration of any of their programs by contracting with school resource officers, private security guards, or any other contractors. As discussed below, Title II of the ADA, its implementing regulation, and Tenth Circuit precedent make this clear.[5]

> A. <u>Title II and its Implementing Regulation Make Clear that a Public Entity Cannot Avoid Liability by Contracting with a Third Party to Provide its Services, Programs, and Activities.</u>

Title II provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. The statute covers all services, programs, or activities "of a public entity" and draws no distinction between a program provided directly by the public entity and a program provided through a contractual or other arrangement.

As directed by Congress, the Department of Justice issued regulations to implement Title II's mandate, codified at 28 C.F.R. Part 35. *See* 42 U.S.C. § 12134 (charging Attorney General to issue implementing regulations). Consistent with the statutory text, the regulation provides that a public entity may not discriminate in the provision of its services, programs, and activities,

---

[5] Aside from this issue and the issues addressed in the Statement of Interest filed on June 24, 2021, ECF No. 51, the United States takes no position on any other issue before the Court.

whether "directly or through contractual, licensing, or other arrangements." 28 C.F.R.

§ 35.130(b)(1), *see also* 28 C.F.R. § 36.130(b)(3).[6]

The commentary to the Title II implementing regulation further clarifies its meaning:

> All governmental activities of public entities are covered, even if they are carried out by contractors. For example, a State is obligated by title II to ensure that the services, programs, and activities of a State park inn operated under contract by a private entity are in compliance with title II's requirements. The private entity operating the inn would also be subject to the obligations of public accommodations under title III of the Act and the Department's title III regulations at 28 CFR part 36.

28 C.F.R. part 35, app. B (commentary § 35.102).[7] Similarly, the Department has further elaborated, in the context of correctional facilities that:

> [T]itle II requirements apply to correctional facilities used by State or local government entities, irrespective of whether the public entity contracts with another public or private entity to build or run the correctional facility. . . . If a prison is occupied by State prisoners and is inaccessible, the State is responsible under title II of the ADA. The same is true for a county or city jail. In essence, the private builder or contractor that operates the correctional facility does so at the direction of the government entity. Moreover, even if the State enters into a contractual, licensing, or other arrangement for correctional services with a public entity that has its own title II obligations, the State is still responsible for ensuring that the other public entity complies with title II in providing these services.

28 C.F.R. part 35, app. A (commentary § 35.152).

---

[6] The Title II regulation is entitled to substantial deference and has the force of law. *Marcus v. Dep't of Revenue*, 170 F.3d 1305, 1306 n.1 (10th Cir. 1999) (citing *Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 844, 81 L. Ed. 2d 694, 104 S. Ct. 2778 (1984) and *Helen L. v. DiDario*, 46 F.3d 325, 332 (3d Cir.), *cert. denied*, 516 U.S. 813 (1995)); *see also Marks v. Colo. Dep't of Corr.,* 976 F.3d 1087, 1097 n.5 (10th Cir. 2020) (citing *Marcus*, 170 F.3d at 1306 n.1).

[7] The Department's regulatory guidance reflects the "agency's authoritative, expertise-based, fair [and] considered judgment." *See Kisor v. Wilkie*, 139 S. Ct. 2400, 2414 (2019) (quoting *Auer v. Robbins*, 519 U.S. 452, 462 (1997)). Under these circumstances, courts should defer to the Department's interpretation of its own regulation. *See id*.; *see also id*. at 2410, 2413 (using the Department's regulatory guidance to the ADA as an example of where *Auer* deference applies). "When it applies, *Auer* deference gives an agency significant leeway to say what its own rules mean." *Id*. at 2418.

Accordingly, the plain text of the ADA, its implementing regulation, and regulatory guidance make clear that a public entity cannot contract away its legal obligations. Instead, a public entity maintains its legal duty and will remain liable for harm in its services, programs, and activities, regardless of how it opts to structure or staff those services.

> B. <u>Tenth Circuit Case Law Supports that a Public Entity, Like the School District, is Liable Under Title II for Discrimination By its Contractor When the Contractor Provides the Public Entity's Services, Programs, or Activities.</u>

The Tenth Circuit, in *Marks v. Colorado Department of Corrections,* ruled that a public entity cannot contract away its liability under Title II of the ADA, and that the state department of corrections could be liable for discrimination by its subcontractor, a community corrections program. 976 F.3d 1087 (10th Cir. 2020). The School District, however, ignores *Marks*, and instead relies on *Bristol v. Board of County Commissioners of Clear Creek*, 312 F.3d 1213 (10th Cir. 2002), which is not relevant to this case, as discussed below. *Marks* governs the School District's liability here.[8]

In *Marks*, the Colorado Department of Corrections (CDOC) entered into a contract with Jefferson County to run a community corrections program. *Id*. at 1092. In turn, Jefferson County contracted with Intervention, a private entity, to run the program. *Id*. The plaintiff sued CDOC under Title II of the ADA, alleging that Intervention determined that she was ineligible for the program due to her disability and returned her to prison. *Id*. Based purely on the contractual relationships between CDOC, the County, and Intervention to run the community corrections program, the Tenth Circuit held that CDOC remained liable for any discrimination

---

[8] Although the School District addressed *Marks* and *Bristol* in moving to dismiss the original complaint, the Court did not analyze those cases because Plaintiff had only plead a joint-employer theory of liability. Order at 30 ("Ultimately, the Court need not determine at this juncture whether *Bristol* or *Marks* applies…."). Because the amended complaint asserts a contractual basis for liability, the issue is now squarely before the Court.

6

against the plaintiff. The court explained that the state entity's services "include 'programs undertaken through third parties by means of contracts and other arrangements.'" *Id*. at 1097. Further, it clarified that "CDOC . . . could farm out operations to others, but doing so would not prevent liability under the Americans with Disabilities Act or the Rehabilitation Act." *Id*. at 1098. Notably, in reaching this conclusion, the Tenth Circuit did not address whether Intervention's employees were jointly employed by the State or County because such a finding was not required to find the State liable.

The Tenth Circuit's holding is consistent with that of other federal courts that have addressed the issue. In *Armstrong v. Schwarzenegger*, for example, the Ninth Circuit held that the State of California maintained its Title II duty to state inmates who were housed in county jails and could be held liable for a county's failure to provide these inmates with reasonable accommodations for their disabilities. 622 F.3d 1058, 1066 (9th Cir. 2010); *see also Castle v. Eurofresh*, 731 F.3d 901, 910 (9th Cir. 2013) ("The law is clear—the State Defendants may not contract away their obligation to comply with federal discrimination laws."). Similarly, in *McIntosh v. Corizon,* the court held that the State of Indiana maintained its Title II obligations when it contracted with a private company to provide medical services to inmates. No. 2:14-cv-00099-JMS-MJD, 2018 WL 1456229, at *8, 2018 U.S. Dist. LEXIS 47837, at *22-23 (S.D. Ind. Mar. 23, 2018).[9] In sum, like the public entities in *Marks, Armstrong*, and *McIntosh,* a school

---

[9] Other district courts have followed suit. *See, e.g.*, *Smith v. Bd. of Comm'rs of the La. Stadium & Exposition Dist.*, 385 F. Supp. 3d 491, 499 (E.D. La. 2019) ("although [private entity] was responsible for operations at [a] concert . . . the concert is an activity for which the [public entity] is responsible" for ADA Title II purposes); *Hahn ex rel. Barta v. Linn County*, 191 F. Supp. 2d 1051, 1054 n.2 (N.D. Iowa 2002) (public entity must "ensure that the private entities with which it contracts comply with the public entity's Title II obligations").

district can contract with a third party to carry out any of its programs, services, or activities, but its Title II obligations remain.

### i. The Tenth Circuit's Decision in Bristol Is Not Relevant to the Issue Before this Court.

Despite *Marks*' clear application to this case, the School District ignores it and instead incorrectly relies on the Tenth Circuit's decision in *Bristol v. Bd. of Cty. Comm'rs of Cty. of Clear Creek*, which involves a claim of employment discrimination under Title I of the ADA. 312 F.3d 1213 (10th Cir. 2002). In *Bristol*, the plaintiff worked for the Clear Creek County Sheriff. After he was terminated, he sued and claimed that both the Sheriff and the Board of County Commissioners were his employers. The Court analyzed whether the Board was the plaintiff's employer under both the joint-employer test and the single-employer test, which "are designed for situations where there is more than one alleged employer," and concluded that the Board was not his employer. *Id*. at 1218. Because Title I of the ADA imposes a duty on an "employer," *see* 42 U.S.C. § 12111, the Court held that the Board owed no duty to plaintiff and remanded the case with instruction to dismiss the Board as a defendant in the case. *Id*.

Because A.V. no longer alleges that the School District jointly employs the SROs and is not proceeding on a joint employer liability theory, Am. Compl. Redline at ¶ 6, 14, 153, 129, 177, *Bristol* is not relevant to this Court's analysis. Additionally, because *Bristol* involves a claim of employment discrimination under Title I of the ADA, the Tenth Circuit had no reason to consider Title II liability generally, the Title II regulation at issue, or to address whether a public entity is liable for discrimination by its contractor when the contractor is carrying out the public entity's services or program. Accordingly, based upon the facts as alleged in the amended complaint, *Marks*, and not *Bristol*, is applicable.

8

### ii. *Marks* Is Not Distinguishable in Any Meaningful Way.

The School District, in its reply memorandum to its motion to dismiss the original complaint, appears to suggest that it will attempt to distinguish *Marks* because the subcontracting entity in that case was private, and not public. *See* Def.'s Reply Mem. at 3, ECF No. 60 (conceding that "it could be liable under Title II if it contracted with a private entity…."). The Tenth Circuit provides no basis for such distinction, and neither does the statutory or regulatory text. Instead, the Department of Justice has made clear in its regulatory guidance that "even if the State enters into a contractual, licensing, or other arrangement for [State] services with a public entity that has its own title II obligations, the State is still responsible for ensuring that the other public entity complies with title II in providing these services." 28 C.F.R. part 35, app. A (commentary § 35.152); *see* 28 C.F.R. § 35.130(b)(3)(iii) (prohibiting discrimination "[t]hat perpetuate[s] the discrimination of another public entity if both public entities . . . are agencies of the same State."); *Armstrong v. Schwarzenegger*, 622 F.3d 1058, 1065–68 (9th Cir. 2010) (rejecting State of California's argument that it could not be liable for ADA violations committed by county jails that were housing state prisoners pursuant to contracts with the state). As such, the fact that the Sheriff's Office also has responsibilities under Title II and may be liable for the SROs' actions does not negate the School District's own legal responsibility to ensure that all of its activities, including its school safety program, are carried out in a non-discriminatory manner. Indeed, imposing Title II obligations on both entities is entirely consistent with the text and purpose of the ADA.

The School District also appears to suggest, in its reply memorandum to its motion to dismiss the original complaint, that it could be liable if the SROs were providing "educational services." *See* Def.'s Reply Mem. at 3, ECF No. 60 (conceding that "it could be liable under

9

Title II if it contracted…to provide an educational service for the District."). Thus, to the extent the School District attempts to limit its ADA obligations to the "educational services" it provides, and not to its other programs, services, and activities such as its SRO program, this too must be rejected. There is no textual basis to import such a limitation. The Title II regulation specifies that Title II of the ADA "applies to *all* services, programs, and activities provided or made available by public entities" and that a "public entity, in providing *any* aid, benefit, or service, may not, directly or through contractual, licensing, or other arrangements" discriminate on the basis of disability. 28 C.F.R. §§ 35.102(a), 35.130(b)(1) (emphasis added); *see also Pa. Dep't of Corr. v. Yeskey*, 524 U.S. 206, 209 (1998). A school district is certainly primarily responsible for providing educational services, but engages in many other services, programs, or activities, including transporting children, preparing and serving food, promoting student health, and constructing and maintaining buildings. A school district can no more allow the contractors it selects to provide those services to discriminate than it could allow discrimination by a person contracted by the school to proctor its examinations. A school district is required to use all its authority to address alleged discrimination that occurs within any of its programs, services, or activities. And the amended complaint alleges that the SRO program is a program of the School District and that the building principal is responsible for the supervision and implementation of the SRO program. Am. Compl. at ¶¶ 92m, 152. Accordingly, any argument that a school district is not required to comply with Title II when it chooses to provide a program through a contractual relationship with another public entity is without basis.

## CONCLUSION

For the foregoing reasons, the United States respectfully requests that the Court consider this Statement of Interest in this litigation.

Date:   May 31, 2022

                                  For the United States of America:

<u>/s/ Kristen Clarke</u>
KRISTEN CLARKE
Assistant Attorney General
Civil Rights Division

REBECCA B. BOND
Chief

<u>/s/ Jane E. Andersen</u>
KATHLEEN P. WOLFE
Special Litigation Counsel
AMANDA MAISELS
Deputy Chief
JANE E. ANDERSEN
Trial Attorney
Disability Rights Section
Civil Rights Division
U.S. Department of Justice
150 M Street, N.E.
Washington, D.C.  20002
Telephone:  202-598-1686
Email:  Jane.Andersen2@usdoj.gov

**CERTIFICATE OF SERVICE**

   I hereby certify that on this 31st day of May, 2022, a correct copy of the foregoing Statement of Interest of the United States of America was filed via CM/ECF and served on the following:

Mark Silverstein
Sara R. Neel
Arielle Herzberg
Asma Kadri Keeler
American Civil Liberties Foundation of Colorado
303 E. 17th Avenue, Suite 350
Denver, CO 80203
Phone: (720) 402-3104
msilverstein@aclu-co.org
sneel@aclu-co.org
aherzberg@aclu-co.org
akeeler@aclu-co.org
*Attorneys for Plaintiff*
*Served via CM/ECF*

Jack D. Robinson
SPIES, POWERS & ROBINSON, P.C.
1660 Lincoln Street, Suite 2220
Denver, CO 80264
Telephone: (303) 830-7090
robinson@sprlaw.net
*Attorney for Plaintiff*
*Served via CM/ECF*

Michael Brent Case
Jonathan P. Fero
M. Johnathan Koonce
Semple, Farrington, Everall & Case, P.C.
1120 Lincoln Street, Suite 1308
Denver, CO 80203
Telephone: (303) 595-0941
bcase@semplelaw.com
jfero@semplelaw.com
jkoonce@semplelaw.com
*Attorneys for Defendant Douglas County School District RE-1*
*Served via CM/ECF*

Amy F. Edwards
Kelley Dunnaway
Douglas County Deputy County Attorney

100 Third Street
Castle Rock, CO 80104
Telephone: (303) 660-7414
aedwards@douglas.co.us
kdunnawa@douglas.co.us
*Attorneys for Defendants Tony Spurlock, Sidney Nicholson, Lyle Peterson, and Daniel Coyle*
*Served via CM/ECF*

Mary Kay Klimesh, Esq.
General Counsel
Douglas County School District RE-1
620 Wilcox Street
Castle Rock, CO 80104
mary.klimesh@dcsdk12.org
*Recipient of Service for Defendant Douglas County School District RE-1*

                              By:    /s/ Jane E. Andersen
                                     Trial Attorney
                                     U.S. Department of Justice
                                     Civil Rights Division
                                     Disability Rights Section